## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FELIX HASSON** ) | |
| ) | |
| *Plaintiff,* ) | **Case No. 1:26-cv-00114** |
| ) | |
| **v.** ) | |
| ) | |
| **MAXIMILLIAN KRCHMAR** ) | |
| ) | |
| *Defendant.* ) | |

## VERIFIED COMPLAINT

Plaintiff Felix Hasson by and through his undersigned counsel, hereby files this Verified Complaint against Defendant Maximillian Krchmar for violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982; the Civil Rights Act of 1871, 42 U.S.C. § 1985; New York Executive Law § 296; N.Y. Civ. Rights Law §§ 40, 40-c, and 41; the New York City Human Rights Law, NYC Administrative Code 8-107; and common law tortious interference with contractual relations to recover monetary damages, attorney's fees, costs and obtain injunctive and declaratory relief.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 as the action arises under, inter alia, 42 U.S.C. § 2000a, a law of the United States, and all other claims are part of the same case or controversy pursuant to 28 U.S.C. § 1367.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant has

1

conducted business in this judicial district and may be found conducting business in this judicial district.

3.     On December 30 and 31, 2024, electronic notice of the events described below was respectively provided to the New York State Division of Human Rights and the New York City Commission on Human Rights. On November 3, 2025, notice was again provided to these entities via USPS registered mail.

4.     Immediately prior to filing this action, a copy of this Complaint was served on the New York Attorney General.

**PARTIES**

5.     Plaintiff Felix Hasson is a professional videogamer whose game of choice is Super Smash Brothers Ultimate ("Smash"). He was excluded from the 2024 Luminosity Make Big Moves, since renamed Let's Make Big Moves  ("LMBM"), Smash tournament on the basis of his Jewish racial, religious, and national origin identity.

6.     Defendant Maximillian Krchmar is a Tournament Organizer ("TO") for LMBM. He canceled Plaintiff's participation in the 2024 LMBM on the basis of Plaintiff's Jewish racial, religious, and national origin identity.

**FACTS**

**Plaintiff's Gaming History and Success**

7.     Plaintiff Felix Hasson is a competitive video gamer specializing in Super Smash Brothers Ultimate.

8.     Smash is a platform-based fighting game made by Nintendo in which players use iconic video game characters to fight each other and try to knock their opponents off of the screen.

There are eighty-nine characters to choose from, each with their own unique abilities, weapons, and tools that players can use to outplay their opponents.

9.    Plaintiff began competitive gaming in or around 2015, playing online tournaments in or around 2020, and in-person tournaments in or around 2021. By or around 2022, he was ranked #3 in Israel, where he resided during a gap year from his education, and he was highly competitive for the #1 spot.

10.    Following Plaintiff's gap year, he returned to the United States and competed in local, regional, and national tournaments in New York, Texas, Florida, and California. Plaintiff is ranked #1 at Rice University and is currently the 23rd best player in the world among players who play as "Terry," one of the characters players can select.

11.    In or around 2024, Plaintiff was invited by Nintendo as one of six players to compete in the Smash Brothers Ultimate Championship 2024 in San Francisco after placing first in the Southwest North American Qualifier.

12.    Over the course of his career, Plaintiff has won prize money, gaming equipment, trophies, and additional items. He estimates the total value of his winnings at around $7,000.

**Plaintiff's Jewish Identity as Related to Israel**

13.    Plaintiff is a Jewish-American who feels and publicly expresses a deep affinity for Israel, his family's ancestral homeland. While Plaintiff and his family have lived outside of Israel for countless generations, Plaintiff identifies Israel as his ultimate place of national origin. His racial and religious identities as a Jew are also intimately connected to Israel. The terms "Jew," "Jewish," and "Judaism" come from the word "Judea," an important part of historic Israel.

14.    Plaintiff is a Zionist, that is an adherent of the "international movement originally for the establishment of a Jewish national or religious community in Palestine"—the historic Jewish

homeland as named by the Roman Empire—"and later for the support of modern Israel."[1] Plaintiff's Zionism as detailed herein, which has its roots in millennia of Jewish tradition, is both a sincerely held religious belief for him and otherwise inseparable from his Jewish race and national origin.

15.    Plaintiff's connection to and support of Israel is neither idiosyncratic nor can it be chalked up to mere politics; it is at the core of what makes Plaintiff (and millions of others) Jewish. The Bible itself references this ancient Jewish hope[2] for a Jewish state while the Prophets and Writings of the Hebrew Bible repeatedly record this aspiration.[3] From a Jewish law perspective, over half of the Biblical commandments that religious Jewish people are bound to obey are specifically tied to the Jewish homeland.[4] From a doctrinal point of view, belief in and hope for the return to Zion (Israel) is literally part of the 13 Principles of Jewish Faith.[5]

16.    Indeed, the Jewish religion is predicated on the belief that God promised Abraham that he and his descendants shall live in and maintain sovereignty over the Land of Israel,[6] which they currently do as the State of Israel, and much of the narrative portions of the Torah and greater Jewish Bible detail the tribulations Jews experience when they do not have sovereignty over this land and their resulting struggle to achieve and maintain such sovereignty.

17.    Even from a purely secular perspective, the Jewish connection to Israel is a core identity feature for those of Jewish national origin and race like Plaintiff. For example, 82% of "U.S. Jews say caring about Israel is an important or essential part of what being Jewish means to them," 58% are "emotionally attached to Israel," and 32% believe "God gave the land that is

---

[1] https://www.merriam-webster.com/dictionary/Zionism
[2] *See e.g.*, *Deuteronomy* 30:1-5
[3] *See e.g.*, *Isaiah* 11:11-12; *Jeremiah* 29:14; 20:41-42; *Psalm* 126; *Psalm* 137.
[4] *About Us,* TORAH VEHA'ARETZ INSTITUTE, https://en.toraland.org.il/about/.
[5] *Maimonides Introduction to Perek Helek,* MAIMONIDES HERITAGE CENTER, https://www.mhcny.org/qt/1005.pdf. (explaining the 12th Fundamental Principle).
[6] Genesis 12:1-9.

now Israel to the Jewish people."[7] In comparison only 17% keep kosher at home[8] and "[o]n a typical day," 20% "wear something that is distinctively Jewish, such as a kippa (yarmulke)."[9] In other words, while attachment to Israel as a matter of religious mandate is more prevalent in U.S. Jewry than other religious aspects such as keeping kosher or wearing a yarmulke, the overwhelming majority of Jews, including those who do not necessarily connect to Israel through a religious belief, nonetheless believe Israel is essential to their identities.

18.    Whether one views Plaintiff's Judaism through the prism of religion, race, or national origin, Zionism and related Jewish sovereignty and self-determination in Israel is core to all three identities.

19.    In pursuit of his ancestral, racial, and religious connection to Israel, Plaintiff first visited Israel in or around 2015 and thereafter spent a gap-year there from approximately August 2021 to June 2022, where he studied Jewish scripture and participated in technology internships.

20.    On or about September 13, 2021, Plaintiff posted on X, then Twitter, "in the west bank bumpin carti . . . i got to introduce these settlements to off the grid" ("*Donda* Tweet"). Below this tweet, he posted a photograph of the Greek god Prometheus giving man fire. *See* Exhibit 1 at 1. At the time, Plaintiff was on a hike in Judea and Samaria—sometimes called the "West Bank"—at Wadi Qelt. Listening to the just released *Donda* music album, Plaintiff joked that he was like Prometheus by introducing a paradigm-shifting album to the backwoods of Israel. Plaintiff's tweet served as a celebration and affirmation of his connection to his ancestral homeland and the time he was spending there. The "settlements" Plaintiff referenced are well known to be homogeneously Jewish communities and exclusively associated with the Jewish

---

[7] https://www.pewresearch.org/religion/2021/05/11/u-s-jews-connections-with-and-attitudes-toward-israel/
[8] https://www.pewresearch.org/religion/2021/05/11/jewish-practices-and-customs/
[9]https://www.pewresearch.org/religion/wp-content/uploads/sites/7/2021/04/PF_05.11.21.Jewish_Survey_Topline.pdf at 35.

people and mandate to re-settle the ancestral Jewish homeland. As noted, the region Plaintiff hiked, Judea, is of the root word for the term "Jew."[10]

21.  On or about, July 27, 2022, the Israel Defense Forces ("IDF"), Israel's military, participated in a popular meme trend by featuring characters from the "Mr. Man" and "Little Miss" children's book series in a post on its official Twitter account.[11] Plaintiff responded to a retweet of this meme with his own, showing an image of a man with an exaggerated square jaw, known in meme culture as a "Chad," which is intended to symbolize confidence and strength, backdropped against an Israeli flag ("Chad Tweet"). Plaintiff wrote "based idf." *See* Exhibit 1 at 2. The Israeli flag is blue and white—symbolizing the distinctive design of Jewish prayer shawls—and is emblazoned with a large Jewish Star of David, both exclusively associated with the Jewish people in common practice. Similarly, Israel itself, and its flag, is exclusively associated with the Jewish people. Plaintiff's tweet served a celebration and affirmation of his connection to his ancestral homeland of Israel, the time he spent there, and those who defend it from anti-Semitic aggression.

22.  The concept of a Jewish warrior class (like the IDF) and national defense of the Land of Israel are as integral to Plaintiff's Jewish religion, race, and national origin as the land of Israel is itself. Indeed, from a biblical or Jewish cultural narrative perspective, the first Jewish army is described a mere two chapters after the Torah details God's promise of Israel to Abraham.[12]

---

[10] *See* Encyclopedia Britannica, *Jew,* (last checked Nov. 28, 2024), https://www.britannica.com/topic/Jew-people ("The term Jew is thus derived through the Latin Judaeus and the Greek Ioudaios from the Hebrew Yĕhūdhī. The latter term is an adjective occurring only in the later parts of the Hebrew Bible and signifying a descendant of Yehudhah (Judah), the fourth son of Jacob, whose tribe, together with that of his half brother Benjamin, constituted the Kingdom of Judah.").

[11] https://x.com/brndxix/status/1552174831201812480 (Jul. 27, 2022).

[12] Genesis 14:14 ("And Abram heard that his kinsman had been taken captive, and he armed his trained men, those born in his house, three hundred and eighteen, and he pursued [them] until Dan.").

23.    All of the doctrinal aspects of Judaism described at length herein, including Plaintiff's Zionism and the use of military force in defending Israel, form a core part of Plaintiff's sincerely held religious beliefs.

24.    On or around January 19, 2023, an X user tweeted a graph of the most popular Smash characters in every country, including "Palestine," a proposed state including Gaza and parts of the West Bank, even though there are no tournaments held in Gaza or the West Bank. Plaintiff retweeted this post and wrote "gaza has a smash scene?" Another user replied to Plaintiff that Palestinians are probably not good at the game, and Plaintiff responded "palestine so free." Plaintiff also noted that it would be funny if the character most frequently used by Palestinians used bombs as their weapon of choice ("Bomb Tweets"). *See* Exhibit 1, at 3.

25.    On or about October 7, 2023, in response to Hamas's invasion of, and its massacre of over 1,200 people in Israel, Plaintiff tweeted "gaza got something big coming their way for sure" ("October 7 tweet").  *See* Exhibit 1, at 4. Plaintiff offered this commentary as an obvious and predictive geopolitical observation, which of course turned out to be correct.

26.    On or about December 20, 2023, Plaintiff replied "LMAOOOO," a slang expression used on social media platforms to denote laughter, to a screenshot of X-user @Selwan_i's celebratory tweet on October 7, juxtaposed against her December 16, 2023 tweet noting that she lost everything ("LMAO tweet"). *See* Exhibit 1, at 5.  In other words, Plaintiff laughed at the fact that karma found someone who cheered the worst massacre of Jews since the Holocaust.

**Plaintiff's Ban from LMBM**

27.    On or about December 20, 2023, Jonathan Mendez posted screenshots of Plaintiff's *Donda*, Chad, Bomb, and October 7 tweets and, directing his tweet to Defendant, Cyrus Gharakhanian, and Geoffrey Tirrell, the LMBM TOs, asked "why is this racist zionist weasel

allowed at your events?"[13] Mendez further tweeted "how is any Palestinian supposed to feel safe at your major when people who relish in and cheer for the complete extermination of their friends and family are allowed in the same space? Genuine question[.] [T]his goes beyond smashy bros, LMBM should be a safe space for everyone." "Israel is committing genocide and anyone who cheers it on should be treated with appropriate scorn." He further tweeted a screenshot of Plaintiff's LMAO tweet. *See* Exhibit 2.

28.     Mendez resorted to a well-known antisemitic trope, echoing Nazi talking points, by referring to Plaintiff as a type of animal, particularly vermin.[14] Weasels are a type of vermin, and "Nazi propaganda is replete with references to Jews as vermin."[15] In fact, in the *Eternal Jew*, the most notorious antisemitic propaganda film ever made, "[t]he narrator describes Jews as the 'vermin of the human race.'"[16]

29.     None of Plaintiff's tweets indicated a desire to harm anyone, regardless of ethnicity. None of Plaintiff's tweets relished in or cheered the loss of innocent Palestinian life in Gaza or otherwise advocated for the "extermination" of any group of people. Defendant knew of Mendez's fabrications because Mendez directed him to Plaintiff's tweets described above.

30.     Several hours after Mendez's Zionist Weasel tweet, Tirrell linked to it in a Facebook group chat that included Defendant and Gharakhanian, the other LMBM TOs. Tirrell posted a screenshot of a final confirmation screen to remove Plaintiff from LMBM, asking "Are you sure you want to remove [Plaintiff]." Defendant approved, noting "Yeah I'm with it." Tirell said "removing this weirdo from the bracket." Defendant responded "Rip Bozo." Exhibit 3 at 1-2.

---

[13] https://x.com/Bravo_irl/status/1737605631266218252 (Dec. 20, 2023) is the original url. Mendez has since deleted his Twitter plaintiff retains screenshots.
[14] https://english.elpais.com/society/2022-12-04/how-nazi-propaganda-dehumanized-jews-to-facilitate-the-holocaust. html ("Rats, lice, cockroaches, foxes, vultures – these are just some of the animals the Nazis used to deride and dehumanize Jews.").
[15] *Id.*
[16] https://aish.com/nazi-propaganda-power/

Gharakhanian posted a screenshot of Plaintiff attempting to establish communication with him via X. In Plaintiff's message to Gharakhanian, made available to Tirrell and Defendant in the group chat, Plaintiff wrote:

> As a Jew I have a strong allegiance to my ethnic homeland and I am very much on the side of my people during this war. I have many friends and family currently fighting in the IDF and I take what's happening over there very seriously. I am a Zionist and a proud supporter of the state of Israel, and that opinion should not have any effect on my ability to compete in tournaments. If you have any concerns over possible safety issues, I can assure you that I am not a danger to anyone . . . and I treat everyone with the same respect that is given to me in return. You can ask any player or TO that has ever spoken with me and they would all say the same thing. I've been removed from LMBM for being a "Zionist weasel" and if that's not a crazy sentence then I don't know what is. I ask you to please reconsider the decision to remove me from LMBM, regardless of what your thoughts are on the war in Israel. Smash has nothing to do with my support for my people in the fight against terrorism.

(cleaned up). *Id*. at 5-9. <u>Defendant wrote "Homie is definitely a Zionist weasel,"</u> echoing Mendez's antisemitic slur. *Id*. at 8.

31.    Defendant has a history of antisemitism in general and as related to Israel. For example, on June 21, 2020 he tweeted: "You know Israel is evil when the only candidate who even dared to speak out against them was the Jewish guy who isn't bought and paid for,"[17] a reference to Senator Bernie Sanders and an allusion to the antisemitic "Jews Control the World" trope, as described more fully below, that Israel and world Jewry wields undue influence in U.S. politics.

32.    Tirrell also posted in the group chat portions of  Plaintiff's direct messages to him, in which Plaintiff said:

> This is also a huge double standard because I'm sure you can find plenty of people who are entered in LMBM that have said some really nasty things about Israel. [Mendez], who has never even spoken to me or met me, called me a

---

[17]  https://x.com/MaxKetchum_/status/1274761361357254656.

Zionist weasel and nothing happens. It's just kind of crazy that I get instabanned over something like this.

*Id.* at 10-12. An earlier portion of Plaintiff's message to Tirrell, which Tirrell seemingly did not send to his colleagues, read as follows:

> I just want to say that as a Jew who has lived in Israel I have a very strong connection to my peoples' homeland. Personally I have a lot of close friends and family members currently fighting in the IDF and I take everything that's going on over there very seriously. I am a proud Zionist and that should not have any impact on my ability to enter a videogame tournament. If you have any possible concerns about safety, I can assure you that I am not a danger to anyone and wouldn't cause any problems at an event. Any TO or player that has ever met me would testify that I would never do anything to endanger the safety of others.

Exhibit 4 at 1-2. None of them ever responded to Plaintiff, even after Plaintiff had advised Gharakhanian and Tirrell (who advised Defendant) that he was being targeted due to his Jewish identity.[18] Despite Plaintiff's pleas, none of the TOs, including Defendant, reversed course in banning Plaintiff.

33.    In a direct quote-tweet to Mendez's antisemitic Zionist Weasel Tweet, and echoing Defendant's own use of the phrase, Tirrell announced that Plaintiff had been "removed."[19] *See* Exhibit 5. This tweet remains publicly available with over 28,000 views. In broadcasting Mendez's racial slur in his quote-tweet, Tirrell did not indicate any umbrage with the racial slur and instead only confirmed that he acceded to Mendez's request, a decision made by both Tirrell and Defendant. Tellingly, he did not quote-tweet Mendez's feigned safety concerns about having Plaintiff at a tournament but rather Mendez's initial tweet simply requesting Plaintiff's ban on grounds that Plaintiff is a "Zionist weasel." Defendant did not object to the manner in which Tirrell announced the decision the two arrived at together.

---

[18] Please note that in Exhibit 3, Tirrell is identified as "Geoffrey," Krchmar as "Mr. Gamer," and Gharakhanian as "Cyrus."
[19] https://x.com/Aerodusk/status/1737653251481424157 (Dec. 20, 2023).

34.    Mendez was not the only person who contacted or otherwise encouraged or incited LMBM's organizers to ban Plaintiff from the tournaments on grounds related to Plaintiff's Jewish identity. In the above described Facebook group chat, Tirrell noted that "80 million" other individuals directed him to Mendez's Zionist Weasel Tweet. Exhibit 3 at 2.

35.    On February 2, 2025, LMBM's owner contacted the LMBM TOs and asked if they could provide him with details on Plaintiff's ban. Exhibit 6. LMBM's owner noted he thought that retweeting "the zionist weasel comment" could be spun as "endorsement of hate speech." *Id*. at 3. Defendant noted "Yeah same, unfortunately. I think we just point to the massive amount of public support that removing him from the event had." *Id*. Gharakhanian and Tirell pointed out there were tweets from the Smash community that indicated community demands to ban Plaintiff. *Id*. LMBM's owner later asked "what was the precedent for you guys deciding on banning him? Id. at 11. Defendant responded: "People def tagged us and supported the [Zionist Weasel] posts, I think it made sense to ban the guy." *Id*. In other words, the LMBM TOs acknowledged bowing to these community demands.

36.    Defendant also suggested ignorance over referring to Jews as animals being a "targeted word," *id*. at 3, but notably did not indicate any ignorance over "Zionist" being a stand-in for "Jew." Moreover, referring to any ethnic group or a characteristic of such groups by linking them to an animal indicates racial animus, but for Jews it is particularly racist given the ubiquity with which the Nazis made such analogies. Perhaps recognizing this, Defendant provided a single screenshot of their Facebook group communication in which Tirrell shared Mendez's Zionist Weasel Tweet but omitted the portion of the chat in which he echoed Mendez's racial slur immediately after being shown  screenshots of Plaintiff's attempts to explain that he was being targeted because of his Jewish identity. *Id*. at 2. Defendant falsely noted the screenshot he sent

"was literally all the deliberation done," a falsehood as the deliberations carried on and included the aforementioned portions. *Id*. Similarly, Tirrell sent a link to his tweet announcing Plaintiff's ban and falsely claimed that his tweet and Defendant's single screenshot were Tirrell's "entire contribution." *Id*.

37.    Defendant also noted "there's no reason for us to even know the guy was Jewish in the first place, he just made some outrageous posts that we'd autoban anybody for." *Id*. at 7. However, leaving aside the obvious indicia of Judaism in Plaintiff's tweets, the TOs knew Plaintiff was Jewish because they reviewed screenshots of his direct messages explicitly noting this fact, as described above, which did nothing to prevent or lift the ban. Moreover, there was nothing outrageous about Plaintiff's tweets nor did the TOs apply a blanket policy as they did not "autoban" Mendez for using Nazi terminology in referring to Jews as vermin.

38.    LMBM's owner asked "you guys saw this guys inappropriate tweets and then Geoff you messaged [Defendant] to confirm if he should be banned from Lmbm, max agreed, and that was the gist of it? *Id*. at 14. Both Tirrell and Defendant affirmed this sequence of events. *Id*. In other, the decision to ban Plaintiff was made by both Tirrell and Defendant after being prompted by Mendez.

39.    LMBM's owner also asked the TOs to look for relevant codes of conduct that Plaintiff may have violated, but they were unable to locate any. *Id*. at 1-2.

40.    Of the TOs who canceled Plaintiff's participation in the 2024 LMBM, only Defendant remains a TO for the annual LMBM.

**Plaintiff's Comparators**

41.    Defendant not only directly targeted Plaintiff because of his Jewish Identity as evidenced by his use of the racial slur "Zionist Weasel," and otherwise bowed to community demands

targeting Plaintiff as such, but he also treated Plaintiff differently than many non-Jews for whom he had no reason to believe were Jewish. Defendant allowed these individuals to participate in LMBM despite public proclamations of antisemitism.

42. As background, antisemitism is best defined by the International Holocaust Remembrance Alliance ("IHRA"), a multi-governmental organization with 35 member countries, including the United States, with a mission "to strengthen, advance and promote Holocaust education, remembrance, and research worldwide."[20] IHRA defines antisemitism as:

> a certain perception of Jews, which may be expressed as hatred toward Jews. Rhetorical and physical manifestations of antisemitism are directed toward Jewish or non-Jewish individuals and/or their property, toward Jewish community institutions and religious facilities.

To illustrate antisemitism in practice, IHRA provides several examples with the following preface:

> Manifestations [of antisemitism] might include the targeting of the state of Israel, conceived as a Jewish collectivity. However, criticism of Israel similar to that leveled against any other country cannot be regarded as antisemitic. Antisemitism frequently charges Jews with conspiring to harm humanity, and it is often used to blame Jews for "why things go wrong." It is expressed in speech, writing, visual forms and action, and employs sinister stereotypes and negative character traits.

IHRA further identifies a number of examples illustrative of antisemitism, including but not limited to the following relevant here:

- Making mendacious, dehumanizing, demonizing, or stereotypical allegations about Jews as such or the power of Jews as collective — such as, especially but not exclusively, the myth about a world Jewish conspiracy or of Jews controlling the media, economy, government or other societal institutions (the "Jews Control the World" Trope).

---

[20] https://holocaustremembrance.com/who-we-are

- Accusing the Jews as a people, or Israel as a state, of inventing or exaggerating the Holocaust.

- Denying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor (Jewish Self-Determination Denial).

- Drawing comparisons of contemporary Israeli policy to that of the Nazis (Holocaust Inversion).

- Holding Jews collectively responsible for actions of the state of Israel.

43.    Defendant did not ban Mendez from LMBM despite referring to Plaintiff using Nazi-esque terminology and his routine false and anti-Semitic accusations that Israel is committing genocide (Holocaust Inversion) and use of the term "Zionist" as a pejorative. Mendez has retweeted a photo of Holocaust concentration camp survivors with the commentary "never again (unless we get to do it)," retweeted posts supporting the legitimization of Hamas (noting it is "not something that needs to be excused"), and retweeted conspiracy theories asserting that "many if not most non-combatants killed on [Oct. 7] were killed by the IOF." IOF is an abbreviation of "Israeli Occupation Force," a slur used against the IDF to portray it as an entity of an illegitimate colonialist regime and thus this slur constitutes Jewish Self-Determination Denial. Mendez indicated that it was Israel rather than Hamas who killed most of the Israelis on October 7. Mendez has endorsed similar anti-Semitic sentiments by retweeting posts referring to those in Israel's internationally recognized borders as "settler civilians" in "occupied lands" who act as "colonial oppressors." Mendez competed in the January 2024 LMBM.[21]

---

[21] After learning of this litigation, Mendez removed public access to his social media. Plaintiff retains screenshots of many of his relevant posts.

44.    Defendant never banned Mohammed Farraj, who has provided analysis and commentary at LMBM and has engaged in Holocaust Inversion by falsely accusing Israel of genocide and has bullied Plaintiff by falsely accusing him of supporting this "genocide."[22] Farraj will attend the 2026 LMBM. Plaintiff apprised Farraj of this antisemitic bullying in prior litigation.[23]

45.    Defendant never banned Shoaib Rasooli despite his history of anti-Semitic posts, including false accusations that Israel is engaging in genocide and that Plaintiff is enthusiastic about said "genocide."[24] Rasooli publicly made these comments on X to LMBM tournament organizer Tirrell in soliciting Plaintiff's ban from LMBM. Rasooli competed in the January 2024 LMBM[25] and is actively soliciting for a spot at the 2026 LMBM on social media.

46.    Finally, Defendant never banned Justin Jones, who competes as "Crowsong," despite his history of engaging in antisemitism by making false accusations that Israel is committing genocide, which is a form of Holocaust Inversion.[26] He has also spoken pejoratively about other ethnicities, namely white people, noting "[t]he bible is just god telling people to commit genocide in one half and white people misinterpreting jesus in the other."[27] Jones competed in the 2024 and 2025 LMBMs.[28]

47.    To the extent that Defendant claims he banned Plaintiff for suspected violations of a neutrally applied "hate speech" policy, this position is false. There was nothing hateful about

---

[22] *See, e.g.*, https://x.com/MomoOnTheMic/status/1737883808026783834 (Dec. 21, 2023); https://x.com/MomoOnTheMic/status/1744085430092403142 (Jan. 7, 2024); https://x.com/MomoOnTheMic/status/1776621503775228032 (Apr. 6, 2024).
[23] *Hasson v. Luminosity Gaming (USA) LLC*, 1:24-cv-09693-NRB, ECF No. 118, ¶48 (S.D.N.Y. 2025)
[24] https://x.com/Shoflowers/status/1737747718162772422 (Dec. 21, 2023); for additional genocide accusations *see, e.g.*, https://x.com/Shoflowers/status/1762258085127590200 (Feb. 26, 2024).
[25] https://smashdata.gg/smash/5/player/Sho?id=29992.
[26] *See e.g.*, https://x.com/The_Crowsong/status/1750662267538932073 (Jan. 25, 2024); s*ee also* https://x.com/The_Crowsong/status/1737321305859276074062 (Dec. 19, 2023)  (falsely accusing Israel of "ethnic cleansing").
[27] https://x.com/The_Crowsong/status/1582356138146037761 (Oct. 18, 2022).
[28] https://smashdata.gg/smash/ultimate/player/Crowsong?id=328844; https://www.start.gg/user/6d7c6f41/results?page=3. Please note Crowsong has recently been playing under the name "05 Matt Hasselback."

Plaintiff's tweets. Moreover, he welcomed aforementioned non-Jews engaging in "hate speech" in the form of anti-Semitic tropes, thus applying a discriminatory double standard to Plaintiff because he is Jewish. This is especially true with respect to Mendez as Defendant was unequivocally aware of his online antisemitism. Finally, as described above, the LMBM TOs were unable to find a relevant code of conduct covering Plaintiff's tweets.

48.  LMBM is held at the New Yorker Hotel, 481 8th Ave, New York, NY 10001, functioning both as a hotel and as made clear by LMBM's presence, a place of exhibition or entertainment.

49.  Defendant had the authority to admit or deny individuals access to LMBM and associated amenities such as discounted lodging at the New Yorker Hotel and wielded such authority in denying Plaintiff admission.

50.  Participation in LMBM hinged on a contract whereby, for consideration of a participant's agreement to adhere to certain rules and policies, in addition to paying a registration fee, which for Plaintiff was $110, LMBM granted admission to compete. LMBM offered this ability to contract for the aforementioned to the general public but denied this ability to Plaintiff, a Jewish person. In fact, the TOs accepted Plaintiff's registration fee, but wrongfully denied him admission without refunding Plaintiff.

51.  LMBM featured an "artist alley" where participants could purchase tournament souvenirs, such as unique art. However, because Plaintiff was banned from LMBM, he was deprived of the opportunity to make such purchases, of which he would have liked the opportunity to consider as he had made purchases from "artist alleys" at similar tournaments.

**Plaintiff's Pending Attendance at the 2026 LMBM**

52.  Plaintiff is registered for the 2026 LMBM and fully intends to compete but reasonably fears his registration will be canceled by Defendant due to Defendant canceling him in the past

for (1) being a "Zionist Weasel" and (2) community complaints about LMBM hosting a "Zionist Weasel." Plaintiff is otherwise concerned about being bullied and harassed by some individuals at LMBM because they bully and harass him online for being a Zionist. Given that Defendant used a racial slur against Plaintiff on the same grounds, Plaintiff believes that, at best, Defendant will brush aside relevant bullying and harassment of Plaintiff as permissible political debate rather than harassment on the basis of Jewish identity. Defendant indicated in prior litigation that targeting someone on the basis of their Zionism is political rather than discriminatory. *See* Exhibit 7 at 3.  Plaintiff therefore reasonably believes Defendant will not exercise his authority as a TO to confront and ameliorate related antisemitic bullying and harassment.

53.    Defendant is permitting Justin Jones aka "Crowsong" to compete in the 2026 LMBM despite Plaintiff previously apprising Defendant of Jones's antisemitism and racism, as described above, during prior litigation.[29] Jones has bullied and harassed Plaintiff on X, calling him a "dweeb ass Zionist" and wishing Plaintiff "tears his Achilles in both knees to shreds."[30] Jones is no better at Smash than he is at anatomy, and while Plaintiff would not mind beating him at LMBM, he does not want to deal with his antisemitic bullying and harassment.

54.    Defendant is permitting Erik Pyshnov aka "Troll_Tactics" to compete in the 2026 LMBM despite Plaintiff previously apprising Defendant of Psyhnov's antisemitism during prior litigation.[31] Like Defendant, Psyshnov ascribes to the "Jews Control the World" trope and has tweeted: "Israel lobbies Congress, not the president. The military-industrial complex would sooner die than stop supporting Israel. The American taxpayer has no choice but to fund genocide."[32] Plaintiff apprised Defendant of this tweet in the prior litigation. Pyshnov has also

---

[29] *Hasson v. Luminosity Gaming (USA) LLC*, 1:24-cv-09693-NRB, ECF No. 118, ¶50 (S.D.N.Y. 2025).
[30] https://x.com/The_Crowsong/status/1963333411567014379
[31] *Hasson v. Luminosity Gaming (USA) LLC*, 1:24-cv-09693-NRB, ECF No. 118, ¶66 (S.D.N.Y. 2025)
[32] https://x.com/Troll_Tactics/status/1717941040059985948

spoken of a "Zionist agenda" with "all this government influence,"[33] doubling down on the Jews Control the World trope. Similarly, he has accused Israel of using "blackmail" and "corruption" to subvert world governments.[34] He has also referred to the Holocaust as a "tool for Zionist propaganda."[35]

55.    Defendant is permitting Michael G. aka "mlarcin" to participate in the 2026 LMBM, who in response to a statement about a settlement Plaintiff reached with another TO, wrote "Zionists are pathetic every single time"[36] and also wrote in response to someone contesting Plaintiff's ban "Zionists can get as far away as possible from the community. Fuck off."[37]

56.    Defendant is permitting "zapgetchu" to compete in the 2026 LMBM despite calling Plaintiff a "fuckass Zionist"[38] and bullying Plaintiff by falsely accusing him of wishing death on Palestinians.[39]

57.    Defendant is permitting Livia W. aka "gmehnc" to compete in the 2026 LMBM who, in response to Plaintiff's settlement with the provider of a video game tournament, tweeted "FUCK ZIONISTS."[40]

58.    Defendant is permitting "nelson_samus" to compete in the 2026 LMBM who, in response to the above mentioned settlement, wrote "I hate inciting violence but like . . . kind of agree" in replying to someone who said "I hope someone beats [Plaintiff's] ass."[41]

59.    Defendant is permitting "doomslug_" to compete in the 2026 LMBM who, in response to Plaintiff's settlement with another TO, mocked Plaintiff's Zionist religious beliefs by tweeting "i

[33] https://x.com/Troll_Tactics/status/1843403219269005704
[34] https://x.com/Troll_Tactics/status/1844817262244761656
[35] https://x.com/Troll_Tactics/status/1867396356559503429
[36] https://x.com/Mlarcin/status/1944955922914091259
[37] https://x.com/Mlarcin/status/1741526121567395879
[38] https://x.com/ZAPgetCHU/status/1935030384531484778
[39] https://x.com/ZAPgetCHU/status/1871228451321270465
[40] https://x.com/GMEhnc/status/1943363660396544498
[41] These tweets have been deleted but Plaintiff retains screenshots.

am a smash player from israel and i was promised attendance at this supermajor 3000 years ago by god."[42] In response to a different settlement with an online platform, he tweeted "I am a Smash player from Israel and this Discord server was promised to me 3,000 years ago by God."[43]

60.   Defendant is permitting "scrungeonmaster" to compete in the 2026 LMBM who, like "doomslug_," mocked Plaintiff's Zionist religious beliefs by tweeting that competing on the online platform was "promised . . . three thousand years ago."[44]

61.   Defendant is permitting Violet Reden aka "lesbians4furina" to compete in the 2026 LMBM despite posting graffiti telling Plaintiff to kill himself and tweeting "I agree."[45]

62.   Defendant is permitting "notmegna" to compete in the 2026 LMBM despite retweeting graffiti telling Plaintiff to kill himself[46] and hoping for a "bare minimum 2 missiles to hit Tel Aviv."[47] Unrelated to Plaintiff, they have also called for the mass shootings of politicians.[48]

63.   Defendant is permitting "skylardrums" to participate in the 2026 LMBM despite previously calling on LMBM to "ban all Zionists" in the wake of Defendant banning Plaintiff from the 2024 LMBM.[49]

64.   2026 LMBM attendees are already discussing Plaintiff's slated attendance at the event, with one tweet gaining 26,400 views.[50]

65.   For all of the online targeted harassment against Plaintiff as described above, which Plaintiff anticipates occurring in-person at the 2026 LMBM, Plaintiff has well-founded fears Defendant will see the use of the term "Zionist" no different than "Republican" based on

---

[42] https://x.com/doomslug_/status/1952597474306052211
[43] https://x.com/doomslug_/status/1944811729751253012
[44] https://x.com/scrungeonmaster/status/1944856734121779589
[45] https://x.com/Lesbians4Furina/status/1948108815511273678
[46] https://x.com/notmegna/status/1948121155853836654
[47] https://x.com/notmegna/status/2005626045224104074
[48] https://x.com/notmegna/status/2006734581559697762
[49] https://x.com/skylardrums/status/1741125843080888542
[50] https://x.com/Yeastmodee/status/2002844485064241558

Defendant's prior position that Zionism is merely political. For example, Defendant sees Michael G.'s statement that "Zionists can get as far away as possible" as no different than "Republicans can get as far away as possible," which is not discriminatory harassment based on a protected characteristic but political debate. In reality, this statement and all of the above should be read no differently than if the term "Ramadan observer" replaced "Zionist," i.e., "Ramadan observers can get as far away as possible." Plaintiff reasonably believes that Defendant will not step in and carry out his duties as a TO to intervene when there is related harassment at LMBM, especially because Defendant himself said far worse about Plaintiff by referring to him as vermin because he is a Zionist.

66.    Plaintiff does not want any special treatment from Defendant and respects Defendant's prerogative as a TO to police and discipline misconduct. Plaintiff simply does not want to be targeted for sanctions on the basis of his Jewish identity, Zionism included. Should Plaintiff engage in misconduct—and he will not—Plaintiff accepts Defendant's right to address that. Plaintiff certainly does not want a "get out of jail free" card from Defendant or, given the copious bullying and harassment Plaintiff has experienced from peers, a reputation that he strongarmed Defendant for such benefits.

## CAUSES OF ACTION

### COUNT I
Violation of Title II of the Civil Rights Act of 1964
42 U.S.C. § 2000a

67.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

68.    42 U.S.C. § 2000a(a) reads: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of

public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

69.    For purposes relevant here, places of public accommodation are statutorily defined as including "any inn, hotel, motel, or other establishment which provides lodging to transient guests," and any "sports arena, stadium or other place of exhibition or entertainment." 42 U.S.C. § 2000a(b).

1.    42 U.S.C. § 2000a-2 reads in relevant part: "No person shall . . . withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a-1 of this title."

70.    Plaintiff is of Jewish race, religion, and national origin, and all of these identities are inseparably connected to the land of Israel, its people, its sovereignty, and its use of military actions to defend itself, or in capsule form: Zionism. Due to Plaintiff's Jewish identity Defendant denied Plaintiff the right to the full and equal enjoyment of competing in the 2024 LMBM at the New Yorker Hotel.

71.    Specifically, Defendant canceled Plaintiff's participation in the 2024 LMBM on grounds that he is a "Zionist Weasel" and related community requests that Plaintiff be banned on such grounds. At the same time, Defendant did not cancel the participation of those engaged in public proclamations of antisemitism, rendering rank pretext any justification that Plaintiff violated a neutrally applied "hate speech" policy. There was nothing inappropriate about Plaintiff's social media activity and many of these individuals, as described above, are participating in the 2026 LMBM despite Plaintiff previously apprising Defendant of their online antisemitism.

72.   As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT II**
Violation of the Civil Rights Act of 1866
42 U.S.C. § 1981

73.   Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

74.   42 U.S.C. § 1981(a) holds: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts " regardless of race.

75.   42 U.S.C. § 1981(b) reads: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

76.   Plaintiff is a racially Jewish person within the jurisdiction of the United States who, because of his Jewish race, was unlawfully denied the right to contract when Defendant canceled his participation in the 2024 LMBM, entry upon which being contingent upon a contract.

77.   As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT III**
Violation of the Civil Rights Act of 1866
42 U.S.C. § 1982

78.   Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

79.   42 U.S.C. § 1982 reads "All citizens of the United States shall have the same right . . . to inherit, purchase, lease, sell, hold, and convey real and personal property" regardless of race.

80.   Plaintiff is a racially Jewish citizen of the United States. Defendant denied Plaintiff, on account of his Jewish race, the right to purchase and/or hold personal property in the form of tournament souvenirs and other collectibles, including those sold at the "artist alley" at LMBM, when he banned Plaintiff from competing in the 2024 LMBM.

81.   As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT IV
### Violations of the Civil Rights Act of 1871
### 42 U.S.C. § 1985

82.   Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

83.   42 U.S.C. § 1985(3) reads in relevant part: "If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages."

84.   As described above, Defendant conspired with Geoffrey Tirrell and Cyrus Gharakhanian to deprive Plaintiff, on the basis of his Jewish identity, the equal protection, privileges, and immunities of a number of laws, including but not limited to Title II of the Civil Rights Act of 1964, the Civil Rights Act of 1866, and all other laws underlying the causes of action in this Complaint. This conspiracy resulted in Plaintiff being banned from the 2024 LMBM.

85.   As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT V**
Violation of New York Executive Law § 296(2)(a)

86.   Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

87.   New York Executive Law § 296(2)(a) reads in relevant part as follows: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed . . . [or] national origin of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

88.   Defendant was, at the very least, a manager and agent of a place of public accommodation, resort, or amusement for the 2024 LMBM.

89.   Plaintiff is of Jewish race, creed, and national origin, and as a result, Defendant denied Plaintiff access to the 2024 LMBM on such grounds.

90.   As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT VI**
Violation of New York Executive Law § 296(6)

91.   Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

92.   New York Executive Law § 296(6) reads in full: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

93.   Defendant conspired and coordinated with Geoffrey Tirrell and Cyrus Gharakhanian to ban Plaintiff from the 2024 LMBM on account of Plaintiff's Jewish identity, and therefore

Defendant aided, abetted, and incited Tirrell and Gharakhanian to enact this ban, which violated New York Executive Law § 296(2)(a).

94.    As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT VII**
Violation of N.Y. Civ. Rights Law §40

95.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

96.    N.Y. Civ. Rights Law §40 reads in relevant part as follows: "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof" regardless of "race, creed . . . or national origin."

97.    Defendant was, at the very least, a manager or agent of the 2024 LMBM, a place of public accommodations, resort or amusement.

98.    Because of Plaintiff's Jewish race, creed, and national origin, Defendant banned Plaintiff from competing in the 2024 LMBM.

99.    As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT VIII
### Violation of N.Y. Civ. Rights Law §40-c

100. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

101. N.Y. Civ. Rights Law §40-c states in relevant part as follows: "No person shall, because of race, creed, [or] national origin . . . be subjected to any discrimination in his or her civil rights . . . by any other person."

102. Plaintiff possessed a civil right to participate in the 2024 LMBM, and Defendant discriminated against Plaintiff in pursuing this right by banning him on grounds of his Jewish race, creed, and national origin.

103. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT IX
### Violation of N.Y. Civ. Rights Law §41

104. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

105. N.Y. Civ. Rights Law §41 in relevant part states as follows: "Any person who . . . shall violate any of the provisions of sections forty . . . or who or which shall aid or incite the violation of any of said provisions . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved."

106. Defendant conspired and coordinated with Geoffrey Tirrell and Cyrus Gharakhanian to ban Plaintiff from the 2024 LMBM on account of Plaintiff's Jewish identity, and therefore Defendant aided, abetted, and incited Tirrell and Gharakhanian to enact this ban in violation of N.Y. Civ. Rights Law §40.

107. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT X
### Violations of New York City Human Rights Law
### NYC Administrative Code 8-107(4)

108. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

109. NYC Administrative Code 8-107(4) in relevant part reads as follows: "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation: Because of any person's actual or perceived race, creed, [or] national origin . . . directly or indirectly: To refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation."

110. Defendant was, at the very least, a manager and agent of a provider of public accommodation for the 2024 LMBM.

111. Plaintiff is of Jewish race, creed, and national origin, and as a result, Defendant denied Plaintiff access to the 2024 LMBM on such grounds.

112. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT XI**

Violations of New York City Human Rights Law
NYC Administrative Code 8-107(6)

113.  Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

114. NYC Administrative Code 8-107(6) reads: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

115.  Defendant conspired and coordinated with Geoffrey Tirrell and Cyrus Gharakhanian to ban Plaintiff from the 2024 LMBM on account of Plaintiff's Jewish identity, and therefore Defendant aided, abetted, and incited Tirrell and Gharakhanian to enact this ban in violation of The bans on Plaintiff were instituted in violation of NYC Administrative Code 8-107(4).

116. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT XII**

Violations of New York City Human Rights Law
NYC Administrative Code 8-107(6)

117.  Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

118.  "Under New York law, the elements of a tortious interference claim are: (a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Popat v. Levy*, 253 F. Supp. 3d 527, 544-45 (W.D.N.Y. 2017) (quoting *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996)).

119.  A valid contract existed between Plaintiff and LMBM for Plaintiff's participation in LMBM in consideration of Plaintiff's registration fee. Defendant had knowledge of this contract

in virtue of being a TO for LMBM and coordinating with Tirrell to cancel Plaintiff's participation, causing a breach in the contract. Defendant's cancelation was obviously intentional, and as it was based on Plaintiff's Jewish identity, also improper.

120. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A. That the Court enter judgment against Defendant and award damages;

B. That the Court enter judgment in favor of Plaintiff against Defendants for all equitable monetary damages available under the law including injunctive relief requiring Defendant to (1) permit Plaintiff to participate in the tournaments for which Defendant is a TO and (2) promptly and adequately respond to any antisemitic harassment Plaintiff faces at Defendant's tournaments;

C. That the Court order Defendant to pay compensatory damages;

D. That the Court order Defendant to pay punitive damages;

E. That the Court order Defendant to pay Plaintiff's reasonable attorney's fees, expert fees, and costs; and

F. That the Court order Defendant to pay pre-judgment and post-judgment interest as provided by law.

## **VERIFICATION**

I, Felix Hasson, Plaintiff in this matter, do hereby verify and affirm under penalty of perjury that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief.

01/07/2026
_____

Date

*Felix Hasson*
_____

Felix Hasson


Date: January 7 , 2026                                    Respectfully submitted,


                                                         National Jewish Advocacy Center, Inc.


                                                          /s/        *Matthew Mainen*
                                                         Matthew Mainen
                                                         Maryland Bar No. 2012170265
                                                         Practicing *Pro Hac Vice*
                                                         Email: matt@njaclaw.org

                                                         **Docketed and also signed by**:

                                                          /s/ *Lauren Israelovitch*
                                                         Lauren Israelovitch
                                                         lauren@njaclaw.org

                                                         3 Times Square
                                                         Suite 517
                                                         New York, NY 10036
                                                         Phone:  (301) 814-9007

Document ID: 6dc8898e-e5d8-4283-84c1-5e8861122f24