**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FELIX HASSON,<br><br>Plaintiff,<br><br>-vs-<br><br>MAXIMILLIAN KRCHMAR,<br><br>Defendant. | Case No.: 1:26-cv-00114 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MAXIMILLIAN KRCHMAR'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF AUTHORITIES

**Federal Cases**

*Akyar v. TD Bank US Holding Co.*,
No. 18-CV-379 (VSB), 2018 U.S. Dist. LEXIS 155789 (S.D.N.Y. Sep. 12, 2018) ....... 16

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................................ 4,5

*Bentley, Jr. v. Mobil Gas Station*,
599 F. App'x 395 (2d Cir. 2015) ........................................................................................ 6

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993) .................................................................................................. 17,18

*Brennan v. Metro. Opera Ass'n,*
95 Civ. 2926 (MBM), 1998 U.S. Dist. LEXIS 5562 (S.D.N.Y. Apr. 20, 1998) ................ 8

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786, 131 S. Ct. 2729, 180 L. Ed. 2d 708 (2011) ............................................. 12

*Canel v. Art Inst. of Chi.*,
No. 23 CV 17064, 2025 U.S. Dist. LEXIS 30309 (N.D. Ill. Feb. 20, 2025) .................. 11

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ............................................................................................. 5

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........................................................................................................ 14

*Coward v. Town & Vill. of Harrison*,
665 F. Supp. 2d 281 (S.D.N.Y. 2009) .......................................................................... 6,17

*Dickerson v. State Farm Fire & Cas. Co.*,
No. 95 Civ. 10733 (MBM), 1996 U.S. Dist. LEXIS 11289, 1996 WL 445076
(S.D.N.Y. Aug. 1, 1996) .................................................................................................. 16

*Dolan v. Connolly*,
794 F.3d 290 (2d Cir. 2015) ........................................................................................... 17

*Dove v. Fordham Univ.*,
56 F. Supp. 2d 330 (S.D.N.Y. 1999) ............................................................................... 16

*Feacher v. Intercontinental Hotels Grp.*,
563 F. Supp. 2d 389 (N.D.N.Y. 2008) ............................................................................ 21

*Fed. Ins. Co. v. United States*,
882 F.3d 348 (2d Cir. 2018) ........................................................................................... 19

*Finley v. Giacobbe*,
79 F.3d 1285 (2d Cir. 1996) .......... 23

*Freidus v. Barclays Bank PLC*,
734 F.3d 132 (2d Cir. 2013) .......... 24

*Gant v. Wallingford Bd. of Educ.*,
69 F.3d 669 (2d Cir. 1995) .......... 6

*Gartenberg v. Cooper Union for the Advancement of Sci. & Art*,
765 F. Supp. 3d 245 (S.D.N.Y. Feb. 5, 2025) .......... 11

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,
442 U.S. 366 (1979) .......... 18

*H.B. v. Byram Hills Cent. Sch. Dist.*,
648 F. App'x 122 (2d Cir. 2016) .......... 14

*Henry v. Lucky Strike Entm't, LLC,*
No. 10-CV-03682 (RRM) (MDG), 2013 U.S. Dist. LEXIS 124939
(E.D.N.Y. Sep. 1, 2013) .......... 20,21,22

*Hicks v. IBM*,
44 F. Supp. 2d 593 (S.D.N.Y. 1999) .......... 16

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
679 F. Supp. 2d 395 (S.D.N.Y. 2009) .......... 23

*In re Alcon S'holder Litig.*,
719 F. Supp. 2d 280 (S.D.N.Y. 2010) .......... 24

*James v. Am. Airlines, Inc.*,
247 F. Supp. 3d 297 (E.D.N.Y. 2017) .......... 14

*Javed v. Medgar Evers Coll. of the City Univ. of N.Y.,*
No. 15-cv-7424 (FB)(ST), 2017 U.S. Dist. LEXIS 161095 (E.D.N.Y. Sep. 29, 2017) .... 9

*Jenkins v. Arcade Bldg. Maint.*,
44 F. Supp. 2d 524 (S.D.N.Y. 1999) .......... 16

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007) .......... 4

*Kavowras v. N.Y. Times Co.*,
328 F.3d 50 (2d Cir. 2003) .......... 5

*Kopmar v. Ass'n of Legal Aid Attys.*,
No. 24-CV-5158 (JPO), 2025 U.S. Dist. LEXIS 134446, (S.D.N.Y. July 15, 2025)........ 11

*Kramer v. Time Warner, Inc.*,
937 F.2d 767 (2d Cir. 1991) ........................................................................................ 5

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011) ........................................................................................ 4

*Landau v. Corp. of Haverford Coll.*,
780 F. Supp. 3d 548 (E.D. Pa. 2025) ........................................................................ 11,12

*Martinez v. City of N.Y.*,
338 F. App'x 71 (2d Cir. 2009) ..................................................................................... 9

*Mian v. Donaldson, Lufkin & Jenrette Sec.*,
7 F.3d 1085 (2d Cir. 1993) ......................................................................................... 16

*Minetos v. City Univ. of N.Y.*,
925 F. Supp. 177 (S.D.N.Y. 1996) .............................................................................. 23

*Newman v. Piggie Park Enter., Inc.*,
390 U.S. 400, (1968) .................................................................................................. 14

*Ostrer v. Aronwald*,
567 F.2d 551 (2d Cir. 1977) (per curiam) .................................................................. 18

*Raytheon Co. v. Hernandez*,
540 U.S. 44 (2003) ..................................................................................................... 7,9

*Reyes v. Fairfield Props.*,
661 F. Supp. 2d 249 (E.D.N.Y. 2009) ........................................................................ 16

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*,
894 F. Supp. 2d 288 (S.D.N.Y. 2012) ........................................................................ 22

*Ruotolo v. City of N.Y.*,
514 F.3d 184 (2d Cir. 2008) ....................................................................................... 24

*Scuderi v. Springer,*
No. 03 Civ. 2098 (RO), 2004 U.S. Dist. LEXIS 23867, 2004 WL 2711048
(S.D.N.Y. Nov. 29, 2004) ............................................................................................ 23

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008) ......................................................................................... 5

*StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*,
158 F.4th 1 (1st Cir. 2025) ......................................................................................... 12

*Stone v. N.Y. Pub. Library,*
No. 05 Civ. 10896 (DLC), 2008 U.S. Dist. LEXIS 32800, 2008 WL 1826485 (S.D.N.Y. Apr. 22, 2008) ........ 6

*Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc.*
(In re Howard's Express, Inc.), 151 Fed. Appx. 46 (2d Cir. 2005) ........ 5

Marks-Ellis v. NYU Langone Health Sys.,
2025 U.S. Dist. LEXIS 122835 (S.D.N.Y. June 27, 2025) ........ 17

*Weslowski v. Zugibe*,
96 F. Supp. 3d 308 (S.D.N.Y. 2015) ........ 19

*Woodman v. WWOR-TV, Inc.*,
411 F.3d 69 (2d Cir. 2005) (per curiam) ........ 7

**Federal Statutes**

42 U.S.C. § 1981 ........ 1,6,15,17,20,21,22

42 U.S.C. § 1982 ........ 1,15

42 U.S.C. § 1985 ........ 17,18,19

42 U.S.C. § 2000a ........ 1,5

**State Cases**

*Silver v. Equitable Life Assurance Soc'y*,
563 N.Y.S.2d 78 (1st Dep’t 1990) ........ 21

**State Statutes**

N.Y. Civ. Rights Law § 40 ........ 1,20,21

N.Y. Civ. Rights Law §40-c ........ 1,21

N.Y. Civ. Rights Law § 41 ........ 1,21,24

Executive Law § 296 ........ 1,19,20

NYCHRL § 8-107 ........ 20,22

NYCHRL § 296 ........ 20

**Rules**

Fed. R. Civ. P. 11 ........ 2

Fed. R. Civ. P. 12 ........ 4, 11

Fed. R. Civ. P. 15 ........ 24

Fed. R. Civ. P. 41 .................................................................................................... 2,3,4

S.D.N.Y. Local Rule 7.1 ............................................................................................. 26

**Other**

NYC Administrative Code 8-107 ............................................................................... 1,22

Defendant Maximillian Krchmar ("Defendant" or "Krchmar") respectfully submits this memorandum of law in support of his motion to dismiss Plaintiff Felix Hasson's ("Plaintiff") Verified Complaint, ECF Doc. 1 (the "Complaint").

## PRELIMINARY STATEMENT

In his Complaint, Plaintiff alleges that because Defendant was involved in the decision to ban Plaintiff from Luminosity Gaming (USA), LLC's ("Luminosity") Luminosity Makes Big Moves Smash tournament ("LMBM") for Plaintiff's public hate speech in response to complaints from other participants about such speech, that Defendant has violated of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a ("Title II"); the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982 ("Section 1981" and "Section 1982", respectively)); N.Y. Civ. Rights Law §§ 40, 40-c, and 41; the New York City Human Rights Law, NYC Administrative Code 8-107; New York Executive Law § 296; and breached a contract. However, Plaintiff was not barred from the LMBM tournament because of who he is, but rather because of what he said. In fact, Plaintiff has not even alleged that Defendant was aware that he is Jewish.

## PROCEDURAL BACKGROUND

It is important for this Court to know the tortured procedural history of this matter. This action was first initiated in this Court under Case No. 24-cv-9693 (the "Initial Action"), and involved numerous defendants for claims arising from entirely separate and unrelated events. *See* Ansell Decl. at ¶ 4. Plaintiff filed his first Complaint on or about December 16, 2024, which did not include Defendant. *See* Ansell Decl. at ¶ 5. Plaintiff filed his First Amended Complaint on or about May 15, 2025, which added Defendant as a party. *See* Ansell Decl. at ¶ 6. Between the filing of his initial Complaint and his First Amended Complaint, Plaintiff voluntarily dismissed defendants Luminosity Gaming (USA), LLC, Jeffrey Franco, House of 3000 LLC,

Unknown Defendants 5-6, Even Matchup Gaming Inc., and Luminosity Gaming Inc. with prejudice pursuant to Rule 41(a)(1)(A)(i). *See* Ansell Decl. at ¶ 7. Defendant Geoffrey Tirrell filed an Answer to Plaintiff's First Amended Complaint on or about August 13, 2025. *See* Ansell Decl. at ¶ 8. Plaintiff filed his Second Amended Complaint on or about August 21, 2025. *See* Ansell Decl. at ¶ 9 and **Ex. A**. Between the filing of his First Amended Complaint and his Second Amended Complaint, Plaintiff voluntarily dismissed defendant Cyrus Gharakhanian with prejudice pursuant to Rule 41(a)(1)(A)(i). *See* Ansell Decl. at ¶ 10.

On or about September 17, 2025, Defendant filed a letter requesting a pre-motion conference for a motion to dismiss. *See* Ansell Decl. at ¶ 11 and **Ex. B**. On that same date, Plaintiff filed a letter requesting a pre-motion conference for a motion for a preliminary injunction against Defendant and defendant Geoffrey Tirrell. *See* Ansell Decl. at ¶ 12 and **Ex. C**. On September 19, 2025, Defendant filed a response to Plaintiff's pre-motion letter, and Plaintiff filed a response to Defendant's pre-motion letter. *See* Ansell Decl. at ¶ 13 and **Exs. D & E**. On October 8, 2025, Plaintiff filed a letter requesting a pre-motion conference for a motion for sanctions pursuant to Fed. R. Civ. P. 11 against Defendant's counsel based on Defendant's response to Plaintiff's pre-motion letter for a motion for a preliminary injunction. *See* Ansell Decl. at ¶ 14 and **Ex. F**. On October, 11, 2025, Defendant filed a response to Plaintiff's letter requesting a pre-motion conference for a motion for sanctions. *See* Ansell Decl. at ¶ 15 and **Ex. G**.

Following a conference with the Court regarding Plaintiff's and Defendant's pre-motion letters, Plaintiff filed a letter advising the Court that Plaintiff would not pursue its motion for a preliminary injunction or accept Defendant's proposed stipulated preliminary injunction (which the Court had indicated provided Plaintiff with the relief sought). *See* Ansell Decl. at ¶ 15 and

**Ex. H**. Plaintiff further advised the Court that he would not be pursuing the motion for sanctions. *See* Ansell Decl. at ¶ 17 and **Ex. H**. Finally, Plaintiff advised the Court that he accepted the Court's offer to amend the Complaint by November 11, 2025, before Defendant filed his motion to dismiss, and that Plaintiff would consult with Defendant's counsel regarding a proposed motion practice timeline and scheduling order. *See* Ansell Decl. at ¶ 18 and **Ex. H**. In response thereto, the Court entered an Order on October 23, 2025, terminating the pre-motion conference and granting Plaintiff leave to file a Third Amended Complaint. *See* Ansell Decl. at ¶ 19 and **Ex. I**.

On or about November 10, 2025, Plaintiff sought to voluntarily dismiss, without prejudice, Defendant and defendants Fawn Chandler, Thomas Fredrickson, Jett Lewis, Jonathan Mendez, Jordan Russell, Andrew Sorensen, Geoffrey Tirrell, Unknown Defendants 2, Unknown Defendants 3, Unknown Defendants 4, Unknown Defendants 7, Unknown Defendants 8, Noah Villeneuve from the Initial Action pursuant to Rule 41(a)(1)(A)(i), leaving only Waypoint Media Café LLC as the sole defendant in the Initial Action. *See* Ansell Decl. at ¶ 20. On or about November 11, 2025, Plaintiff filed a letter to the Court requesting that the Court extend his time to file the Third Amended Complaint from November 11, 2025, until one week after the Court approved the foregoing voluntary dismissal. *See* Ansell Decl. at ¶ 21. Due the fact that defendant Geoffrey Tirrell had already filed an Answer, on or about December 10, 2025, Defendant filed a request to voluntarily dismiss all defendants, except Geoffrey Tirrell and Waypoint Media Café LLC, from the Initial Action without prejudice pursuant to Rule 41(a)(1)(A)(i). *See* Ansell Decl. at ¶ 22. The Court granted Plaintiff's voluntary dismissal on or about December 11, 2025. *See* Ansell Decl. at ¶ 23. Defendant then filed a Third Amended Complaint against only Geoffrey Tirrell and Waypoint Media Café LLC on or about January 4,

2026. *See* Ansell Decl. at ¶ 24. On or about January 20, 2026, Plaintiff voluntarily dismissed defendant Geoffrey Tirrell with prejudice from the Initial Action pursuant to Rule 41(a)(1)(A)(i). *See* Ansell Decl. at ¶ 25.

Instead of filing a Third Amended Complaint against Defendant pursuant to the Court's Order and Plaintiff's own representations, he instead chose to voluntarily dismiss Defendant without prejudice, only to file an entirely new action after having already filed four Complaints in the Initial Action.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions"

or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted). A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). Courts can take judicial notice of public filings, including dockets and procedural history. *See Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re Howard's Express, Inc.*), 151 Fed. Appx. 46, 48 (2d Cir. 2005) (stating "we are empowered to take judicial notice of public filings and do so here."); *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (noting that courts may take judicial notice of public filings); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and relating filings.") (internal citations omitted).

## LEGAL ARGUMENT

### I. Plaintiff's Complaint Fails to Adequately Allege Discriminatory Intent by Defendant, Compelling the Dismissal of Plaintiff's Claim for Violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (Count I)

Under Title II, "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). A plaintiff bringing a claim under Title II must allege facts showing (1) that he was deprived of equal use and enjoyment of a place of public

accommodation and (2) facts which demonstrate discriminatory intent. *See Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009).

At the motion to dismiss stage, "the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)); *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) ("To survive a motion to dismiss, a plaintiff [asserting claims under § 1981] must specifically allege the circumstances giving rise to a plausible inference of racially discriminatory intent." (citation and internal quotation marks omitted)). "A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss." *Bentley, Jr.*, 599 F. App'x at 396. The standard for whether discriminatory intent was adequately pled under Title II is the same as under § 1981. *See Stone v. N.Y. Pub. Library*, No. 05 Civ. 10896(DLC), 2008 U.S. Dist. LEXIS 32800, 2008 WL 1826485, at *3 (S.D.N.Y. Apr. 22, 2008), *aff'd*, 348 F. App'x 665 (2d Cir. 2009).

As set forth below, Plaintiff's Complaint fails to adequately allege a discriminatory intent by Defendant in the decision to ban him from the LMBM tournament. Moreover, Plaintiff improperly conflates Zionism with Judaism, the former of which is not a protected class. Finally, Plaintiff has not and cannot adequately alleged a prospective harm that injunctive relief (the only relief available under a Title II claim) is necessary to prevent. However, even if there was such prospective harm, if there is another tournament, establishment, or group that Defendant exercises any control over who participates, Defendant hereby agrees to permit Plaintiff to

participate, thereby rendering Count I of Plaintiff's Complaint moot, compelling its dismissal with prejudice.

### A. Plaintiff has Failed to Adequately Allege a Discriminatory Intent

Plaintiff fails to allege that Defendant was ever aware that Plaintiff was Jewish and admits the existence of a non-discriminatory basis for him being barred from the LMBM tournament; namely that a third-party reported Plaintiff's hate speech.

It is well-settled that in order to establish a prima facie case of discrimination, there must be some evidence that the defendant knew of the plaintiff's protected status. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003) ("If Bockmiller were truly unaware that such a disability existed, it would be impossible for her hiring decision to have been based, even in part, on respondent's disability. And, if no part of the hiring decision turned on respondent's status as disabled, he cannot, ipso facto, have been subject to disparate treatment."); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 81-82 (2d Cir. 2005) (finding that "a defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant") (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996) (finding that a plaintiff suing under the ADA was required to adduce some evidence of a defendant's knowledge of the alleged disabling condition to establish a prima facie case of discrimination); *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996) (per curiam) (same); *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996) ("In other cases involving personal attributes not obvious to the employer, courts have regularly held that the plaintiff cannot make out a prima facie case of discrimination unless he or she proves that the employer knew about the plaintiff's particular personal characteristic")*; Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 443 (6th Cir. 2002) ("to establish a prima facie case of discrimination, the employee must prove that

the employer had knowledge of the disability.”)*; Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1007 (7th Cir. 2001) (“We conclude that the record does not support Clay's allegation that Seliga knew about her pregnancy before he selected her for the RIF.”)*; Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1306 (11th Cir. 2002) (Because plaintiff failed to "present any evidence that the decision-maker knew of his religion," the court ruled that he necessarily "failed to establish a prima facie case of intentional religious discrimination.")*; Robinson v. Adams*, 847 F.2d 1316 (9th Cir. 1987) (“But the McDonnell Douglas elements would not rationally create this inference if, as here, a plaintiff offers proof that he is Black, but there is no showing by direct or indirect evidence that the decision-maker knew this fact.”))*; see also, Brennan v. Metro. Opera Ass'n*, 95 Civ. 2926 (MBM), 1998 U.S. Dist. LEXIS 5562, at *25-26 (S.D.N.Y. Apr. 20, 1998) (“even if Guarino can be said to have replaced plaintiff or filled her position, there is no evidence that Kneuss, Volpe, or any other person in a position of authority at the Met actually knew plaintiff's true age when the decision was made not to rehire her.”)

In this case, it is undisputed that Plaintiff made the following public statements:

- In reference to Palestinians playing Smash: “would have been mad funny if the most popular character was snake or any other character that pulls bombs.” *See* ECF Doc. 1 at ¶ 24 & **Ex. 1** at p. 3.
- In response to a Palestinian tweeting that she “Lost everything”, Plaintiff posted “LMAOOO”. *See* ECF Doc. 1 at ¶ 26 & **Ex. 1** at p. 5.

It is further undisputed that Plaintiff’s public statements were reported by a third-party who asked, “how is any Palestinian supposed to feel safe at your major when people who relish in and cheer for the complete extermination of their friends and family are allowed in the same space?”

*See* ECF Doc. 1 at ¶ 27. It further undisputed that it was in response to this report that Plaintiff was banned from the LMBM tournament. *See* ECF Doc. 1 at ¶ 30.

Tellingly, not one statement cited by Plaintiff prior to his message to Cyrus Gharakhanian ("Gharakhanian") and Geoffrey Tirrell ("Tirrell") after he had already been banned from the LMBM tournament indicates that Defendant was aware Plaintiff was Jewish, and the Complaint make no such allegation. *See* ECF Doc. 1 at ¶ 30 and **Ex. 3** at pp. 2-9. Contrary to what Plaintiff would like this Court to believe, as set forth in greater detail in Section I(B), *infra*, Zionist does not equal Jewish, and Zionism is not a race, religion, national original, or any other protected class. Rather, it is a political ideology. This alone is fatal to Plaintiff's claim. *See Raytheon Co.*, 540 U.S. at 54 n.7

Moreover, where the plaintiff acknowledges a non-discriminatory reason for an adverse action, without any alleged facts that this reason was pretextual, dismissal at the pleadings stage is warranted. *See Martinez v. City of N.Y.*, 338 F. App'x 71, 73 (2d Cir. 2009) (dismissing complaint where "the complaint acknowledged the Defendants' non-discriminatory reason for the adverse action and failed to allege facts which, if proved, would establish that this reason for the penalty was pretextual, and that the action was, in fact, taken due to a discriminatory animus."); *Javed v. Medgar Evers Coll. of the City Univ. of N.Y.*, No. 15-cv-7424(FB)(ST), 2017 U.S. Dist. LEXIS 161095, at *17 (E.D.N.Y. Sep. 29, 2017) ("Javed has not alleged any facts that would give rise to an inference of discrimination surrounding these events. Instead, the facts alleged in the SAC provide a much more pedestrian reason for Medgar Evers's actions against him: that he was disciplined because of the failure of Medgar Evers's IT security systems while he was IT Security Manager").

Here, Plaintiff acknowledges the non-discriminatory reason for being banned from the LMBM tournament; namely that another participant reported Plaintiff's inflammatory public statements to the LMBM Tournament Organizers ("TO(s)") and stated that Palestinians would not feel safe if Plaintiff attended. Since there is no allegation that Defendant knew Plaintiff was Jewish at the time the decision was made to ban Plaintiff, and since there are no other facts alleged to demonstrate that the non-discriminatory reason was pretextual, Plaintiff's Complaint should be dismissed. Although Plaintiff's Complaint includes allegations that other participants made offensive comments and were not banned from the LMBM tournament, *see* ECF Doc. 1 at ¶¶ 41, 43-46, there is no allegation that Defendant, or others involved in the LMBM tournament, were aware of these statements or that anyone ever complained to Defendant, or others involved in the LMBM tournament, about those participants' involvement in the LMBM tournament. In fact, Plaintiff's Complaint acknowledges that the LMBM TOs received numerous "community demands to ban Plaintiff", yet does not allege that the TOs received similar demands about other participants. *See* ECF Doc. 1 at ¶ 35. Thus, the fact that the LMBM TOs banned Plaintiff based on complaints received about Plaintiff's comments, but did not affirmatively search all of social media to identify all people who have made similarly offensive comments in order to ban them as well, shows that Plaintiff was not targeted by the LMBM TOs because of his religion, but rather because of the complaints made against him to the LMBM TOs by others.

Plaintiff's Complaint does no more than nakedly allege that Defendant acted based on the Plaintiff's Judaism, which "is too conclusory to survive a motion to dismiss." *Bentley, Jr.*, 599 F. App'x at 396. Accordingly, Defendant respectfully requests that the Court grant his Motion and dismiss Plaintiff's Complaint with prejudice.

### B. Zionist is not a Protected Class

Contrary to Plaintiff's allegation that Zionism is a protected class, that has been rejected by the courts in this District. Courts in the Southern District have directly addressed the question of whether Zionism is a protected class under Title VI and VII, and the answer is no. In *Gartenberg*, the court found that allegations concerning protests, fliers, and other expressions related to the Israeli-Palestinian conflict, which touched on topics like Zionism, colonialism, and racism, could not alone survive a motion to dismiss under Rule 12(b)(6). *See Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 264-66 (S.D.N.Y. Feb. 5, 2025). Similarly, in *Kopmar*, the court found that "at least one court in this district has refused to extend federal antidiscrimination protections to 'pure political speech,' including when such speech is alleged to be antisemitic by dint of its criticism of Israel and Zionism." *Kopmar v. Ass'n of Legal Aid Attys.*, No. 24-CV-5158 (JPO), 2025 U.S. Dist. LEXIS 134446, at *18-19 (S.D.N.Y. July 15, 2025) (quoting *Gartenberg*, 765 F. Supp. 3d at 264). The *Kopmar* court further opined that antidiscrimination laws "may not 'single out for opprobrium only that speech directed toward . . . specified disfavored topics.'" *Kopmar*, 025 U.S. Dist. LEXIS 134446, at *19 (quoting *Virginia v. Black*, 538 U.S. 343, 358 (2003)); *see also Canel v. Art Inst. of Chi.*, No. 23 CV 17064, 2025 U.S. Dist. LEXIS 30309, at *27 (N.D. Ill. Feb. 20, 2025) (distinguishing "between conduct that merely criticizes Israeli government policy or Zionist ideology and conduct that 'sends a message that Jews as a class do not belong in Israel while justifying and encouraging violence against those Jews who do live there.'" (quoting *Gartenberg*, 765 F. Supp. 3d at 268)); *Landau v. Corp. of Haverford Coll.*, 780 F. Supp. 3d 548 (E.D. Pa. 2025) ("I reject Plaintiffs' embedded proposition that any anti-Israel speech is intrinsically antisemitic, because

reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views.”).

Other Circuits and Districts have similarly found that Zionist is not a protected class. *See* e.g., *Landau v. Corp. of Haverford Coll.*, 780 F. Supp. 3d 548, 555 (E.D. Pa. 2025) (“Plaintiffs' equivocation is disingenuous, but likely strategic, seeking to blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity, and in the process implicitly sweep any and all criticism of Israel into the basket of antisemitism. As a threshold matter, as I have done previously, I reject Plaintiffs' embedded proposition that any anti-Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views.”). The First Circuit, in finding that Zionism is not a protected class, opined as follows:

> Plaintiffs are entitled to their own interpretive lens equating anti-Zionism (as they define it) and antisemitism. But it is another matter altogether to insist that others must be bound by plaintiffs' view. Plaintiffs' equation finds no consensus support in dictionary definitions. Nor does a review of the academic literature point to any consensus that criticism of Zionism is antisemitic. And we do not find it dispositive that the United States Department of State has defined antisemitism as "[d]enying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor." Office of the Special Envoy to Monitor and Combat Antisemitism, Defining Antisemitism, U.S. Dep't of State https://www.state.gov/defining-antisemitism [https://perma.cc/2KZF-TRBY] (last visited Sept. 29, 2025). As the Supreme Court has repeatedly emphasized, "new categories of unprotected speech may not be added to the list by a legislature that concludes certain speech is too harmful to be tolerated." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 791, 131 S. Ct. 2729, 180 L. Ed. 2d 708 (2011) (citing *United States v. Stevens*, 559 U.S. 460, 469-472, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010)). [*StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 16-17 (1st Cir. 2025)].

Plaintiff's Complaint is devoid of any allegation that Plaintiff was ever referred to as Jewish or otherwise discriminated against based on his race or religion. Instead, Plaintiff relies solely on references to him being a Zionist to support his claims. In fact, Defendant is not even alleged to have referred to Plaintiff as a Zionist until after Plaintiff sent a message to Gharakhanian in response to being banned from the LMBM tournament identifying himself as a Zionist. *See* ECF Doc. 1 at ¶ 30. To try to falsely paint Defendant as anti-Semitic, Plaintiff quotes a tweet from Defendant from June 21, 2020, stating "You know Israel is evil when the only candidate who even dared to speak out against them was the Jewish guy who isn't bought and paid for.." *See* ECF Doc. 1 at ¶ 31. Incredibly, Plaintiff seeks to define criticism against a foreign state, Israel, as anti-Semitic. Does that mean that the United Nations Independent International Commission of Inquiry on the Occupied Palestinian Territory, including East Jerusalem, and Israel[1], Amnesty International[2], and the Israeli human rights organizations of B'Tselem and Physicians for Human Rights-Israel[3], among others, are anti-Semitic for finding that Israel's actions against Palestinians constitute genocide? Is the International Criminal Court anti-Semitic for issuing an arrest warrant for Israel's Prime Minister, Benjamin Netanyahu, for war crimes?[4]. Based on Plaintiff's proposed definition, the answer would be yes, but based on reason and law, the answer is clearly no.

Accordingly, Plaintiff has failed to allege that he was discriminated against because of his belonging to a protected class, compelling the dismissal of his Complaint with prejudice.

---

[1] https://www.ohchr.org/en/press-releases/2025/09/israel-has-committed-genocide-gaza-strip-un-commission-finds

[2] https://www.amnesty.org/en/latest/news/2024/12/amnesty-international-concludes-israel-is-committing-genocide-against-palestinians-in-gaza/

[3] https://www.npr.org/2025/07/28/nx-s1-5482881/israel-gaza-genocide-rights-groups-btselem-physicians#:~:text=His%20name%20is%20Mohammad%20Al,%2C%20attack%20%E2%80%94%20amounts%20to%20genocide.

[4] https://www.icc-cpi.int/defendant/netanyahu

### C. Plaintiff has Failed to Allege Sufficient Facts to Support Prospective Relief.

Under Title II, a plaintiff cannot obtain money damages, only prospective injunctive relief. *See Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 401, (1968). To show standing for prospective relief, a plaintiff must plead and prove a "real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *accord H.B. v. Byram Hills Cent. Sch. Dist.*, 648 F. App'x 122, 125 (2d Cir. 2016) ("To obtain prospective relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia*, a sufficient likelihood that he or she will again be wronged in a similar way." (internal quotation marks and alterations omitted)).

In *James v. Am. Airlines, Inc.*, the court dismissed the plaintiff's complaint at the pleading stage, finding that that plaintiff "fail[ed] fails to allege facts sufficient to sustain prospective relief under Title II. *James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 306 (E.D.N.Y. 2017). Specifically, the court found that:

> the complaint alleges that James was the victim of a single act of discrimination by one or two American employees onboard a specific aircraft under specific circumstances involving an altercation between herself and another passenger. James does not allege any facts suggesting that she plans to take another American flight in the near future, let alone that she is likely to take a flight staffed by the same pilot and crew whom she accuses of acting against her with discriminatory intent. James also does not allege any facts suggesting a policy, practice, or pattern of discrimination onboard American flights such that James could rest her claim to prospective relief on more general allegations of an intent to fly American in the future … In sum, James does not adequately allege "a sufficient likelihood that [she] will again be wronged in a similar way" by American. [*Id.* (internal citation omitted)].

Similarly, in this case, Plaintiff's Complaint alleges a single act of discrimination by specific individuals under specific circumstances involving a specific event. Plaintiff then alleges that he is concerned about his registration for the 2026 LMBM tournament, despite the

fact that Defendant had agreed to a stipulated preliminary injunction prohibiting Defendant from banning Plaintiff, which Plaintiff chose not to accept and for which Plaintiff did not file a motion seeking such an injunction. *See* ECF No. 1 at ¶ 52; Ansell Decl. at ¶¶ 13 & 16 and **Exs. D & H**. Ironically, Plaintiff then goes on to criticize Defendant for permitting other individuals who posted content that Plaintiff finds offensive to attend, ignoring the fact that Defendant was being sued for banning Plaintiff for posting content that others found offensive. *See* ECF No. 1 at ¶ 53-63. If Plaintiff is allowed to attend despite others finding his posts offensive, then others must be allowed to attend despite Plaintiff finding their poses offensive. Plaintiff cannot have his cake and eat it too.

In any event, the 2026 Tournament that Plaintiff so feared has concluded without incident, and Defendant agrees to permit Plaintiff to participate in any future events, thereby rendering Count I of Plaintiff's Complaint moot, compelling its dismissal with prejudice.

## II. The Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982 (Counts II & III)

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings." 42 U.S.C. § 1981(a). Section 1982 provides: "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To establish a claim under 1981 or Section 1982, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial [or ethnic] minority, (2) an intent to discriminate on the basis of race [or ethnicity] by the defendant, and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence,

etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *see also Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 267 (E.D.N.Y. 2009).

Thus, in order to survive a motion to dismiss, "the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint." *Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524, 528 (S.D.N.Y. 1999) (internal citation omitted). "Conclusory or naked allegations" are insufficient; "[f]act-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999), *aff'd sub nom. Dove v. O'Hare*, 210 F.3d 354 (2d Cir. 2000); *see also Dickerson v. State Farm Fire & Cas. Co.*, No. 95 Civ. 10733 (MBM), 1996 U.S. Dist. LEXIS 11289, 1996 WL 445076, at *3 (S.D.N.Y. Aug. 1, 1996) ("It is not enough merely to assert that the defendant took adverse action against the plaintiff, and that the action was the product of racial animus. The complaint must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus."). Finally, "a complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination." *Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999) (citing *Yusuf*, 35 F.3d at 714).

"A complaint that identifies 'other possible motives' … for a defendant's action and that does not contain 'specific facts' suggesting discriminatory animus 'contradicts a claim of racial [or ethnic] discrimination.'" *Akyar v. TD Bank US Holding Co.*, No. 18-CV-379 (VSB), 2018 U.S. Dist. LEXIS 155789, at *11 (S.D.N.Y. Sep. 12, 2018) (quoting *Korova Milk Bar of White Plains, Inc. v. PRE Props.*, LLC, 2013 U.S. Dist. LEXIS 14937, at *11 (S.D.N.Y. Feb. 1, 2013); *see also Yusuf.*, 35 F.3d at 714 (affirming dismissal of § 1981 claim where plaintiff failed to

provide factual support for "naked allegation" of discrimination but did allege several non-discriminatory reasons for the resulting action); *Andrews v. Freemantlemedia N.A., Inc.*, No. 13 Civ. 5174(NRB), 2014 U.S. Dist. LEXIS 166242, 2014 WL 6686590, at *10-11 (S.D.N.Y. Nov. 20, 2014) (dismissing § 1981 claim where complaint provided clear motive for adverse action that was not based on racial animus), *aff'd*, 613 F. App'x 67 (2d Cir. 2015); *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 475 (S.D.N.Y. 2013) (same).

"The same standard for discrimination claims applies to both claims brought under Section 1981 and Title II of the Civil Rights Act of 1964." *Marks-Ellis v. NYU Langone Health Sys.*, 2025 U.S. Dist. LEXIS 122835, at *23 (S.D.N.Y. June 27, 2025) (internal citations omitted); *see also Coward*, 665 F. Supp. 2d at 307 (dismissing Title II claims based on same reasons used to dismiss § 1981 claims).

Accordingly, for the same reasons as set forth in Section I(A)-(B), *supra*, Counts II & III of Plaintiff's Complaint must respectfully be dismissed.

## III. <u>The Civil Rights Act of 1871, 42 U.S.C. § 1985 (Count IV)</u>

"A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). Regarding the second requirement, the Supreme Court emphasized that "it does not suffice for application of § 1985(3) that a protected right be incidentally affected." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275 (1993). Instead, the Court explained:

> The right must be "*aimed at;*" its impairment must be a conscious objective of the enterprise. . . . the "intent to deprive of a right" requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it. [*Id.* at 762 (citations and footnote omitted and emphasis supplied)].

Complaints containing only "conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights" will be dismissed. *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (per curiam) (internal quotation marks omitted).

**A. Plaintiff does not allege a violation of a protected right**

As to the second requirement, § 1985(3) does not provide substantive rights itself; it provides a remedy for persons injured by a conspiracy to deprive them of "the equal protection of the laws, or of equal privileges and immunities under the laws." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). The right or rights claimed to have been infringed "must be found elsewhere." *Id.* The Supreme Court has recognized only two federal constitutional rights for purposes of a § 1985(3) claim that are protected against private as well as government encroachment: "the Thirteenth Amendment right to be free from involuntary servitude ... and, in the same Thirteenth Amendment context, the right of interstate travel." *Bray*, 506 U.S. at 278.

Here, Plaintiff does not allege any facts to suggest that the objective of the Defendant's so-called conspiracy was to cast him into involuntary servitude or to obstruct his interstate travel. Accordingly, Count IV of Plaintiff's Complaint must respectfully be dismissed with prejudice.

**B. Defendant could not have engaged in a conspiracy**

The "intracorporate conspiracy doctrine" holds that "because employees acting within the scope of their employment are agents of their employer, an employer and its employees are

generally considered to be a single actor, rather than multiple conspirators." *Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 (2d Cir. 2018). This doctrine applies whether the defendant are officers, agents, or employees. *See Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 322 (S.D.N.Y. 2015) (inner quotation marks and citation omitted), *aff'd*, 626 F. App'x 20 (2d Cir. 2015). The Second Circuit has extended the doctrine "to the context of conspiracies to interfere with civil rights in violation of 42 U.S.C. § 1985." *Fed. Ins. Co.*, 882 F.3d 348 at 368 n.14 (citing *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 70 (2d Cir. 1976)).

Here, Plaintiff admits that Defendant is a Tournament Organizer for LMBM. *See* ECF Doc. No. 1 at ¶ 6. Plaintiff further acknowledges that Luminosity's owner contacted the LMBM TOs regarding Plaintiff's ban, asked for information regarding how the decision to ban Plaintiff was made, and asked the LMBM TOs to look for relevant codes of conduct for the tournament. *See* ECF Doc. No 1 at ¶¶ 35, 38-39. Plaintiff does not allege that the LMBM TOs were acting outside of their authority as agents of Luminosity, and in fact the owner of Luminosity consulted with them about the decision, evidencing that it was clearly within their scope.

Accordingly, pursuant to the "intracorporate conspiracy doctrine", Defendant cannot be liable for a conspiracy claim under Section 1985(3), compelling dismissal of Count IV of Plaintiff's Complaint with prejudice.

## IV. <u>New York Executive Law § 296 (Counts V & VI)</u>

New York Executive Law § 296(2)(a) states, in relevant part, that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed . . . [or] national origin of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or

privileges thereof . . . or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, [or] national origin . . . or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, [or] national origin . . . is unwelcome, objectionable or not acceptable, desired or solicited." New York Executive Law § 296(2)(a). New York Executive Law § 296(6) states, "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." New York Executive Law § 296(2)(a).

"[C]laims pursuant to NYCRL § 40, NYSHRL § 296, and NYCHRL § 8-107(4) are analyzed identically to their section 1981 claims." *Henry v. Lucky Strike Entm't, LLC*, No. 10-CV-03682 (RRM) (MDG), 2013 U.S. Dist. LEXIS 124939, at *41-42 (E.D.N.Y. Sep. 1, 2013) (citing *Whitehurst v. 230 Fifth, Inc.*, No. 11 Civ. 0767, 2011 U.S. Dist. LEXIS 81573, 2011 WL 3163495, at *9 (S.D.N.Y. July 26, 2011) (noting that discrimination claims pursuant to section 1981, NYSHRL 296, NYCRL § 40, and NYCHRL § 8-107(4) are analyzed under the same standard); *Drayton v. Toys "R" Us Inc.*, 645 F. Supp. 2d 149, 163-64 (S.D.N.Y. 2009) (noting that claims under § 1981, NYSHRL § 296 and NYCRL § 40 are analyzed identically); *Howe v. Town of Hempstead*, No. 04 Civ. 0656, 2006 U.S. Dist. LEXIS 78927, 2006 WL 3095819, at *5 (E.D.N.Y. Oct. 30, 2006) (noting that § 1981, NYSHRL § 296, and NYCRL § 40 "all undergo essentially the same analysis").

Accordingly, for the same reasons as set forth in Section I(A)-(B), *supra*, Counts V and VI of Plaintiff's Complaint must also respectfully be dismissed.

## V. N.Y. Civ. Rights Law §§ 40, 40-c, and 41 (Counts VII, VIII & IX)

New York Civil Rights Law § 40 prohibits denial of access to places of public accommodation on the basis of race. *See* N.Y. Civil Rights Law § 40. As set forth above, claims under New York Civil Rights Law § 40 are analyzed identically to Section 1981 claims. *See Henry*, No. 10-CV-03682 (RRM) (MDG), 2013 U.S. Dist. LEXIS 124939, at *41-4. Accordingly, for the same reasons as set forth in Sections I(A)-(B), *supra*, Counts VIII-IX of Plaintiff's Complaint must also be dismissed

Moreover, although "New York Civil Rights Law § 41 'establishes a private cause of action to recover a statutory penalty against those who violate these rights or who aid or incite such a violation'", *Feacher v. Intercontinental Hotels Grp.*, 563 F. Supp. 2d 389, 407 (N.D.N.Y. 2008) (citation omitted), Section 41 requires that "[a]t or before the commencement of any action under this section, notice thereof shall be served upon the attorney general." N.Y. Civil Rights Law § 41. "The failure to comply with the notice provisions of New York Civil Rights Law Article 4 is fatal to a private action under that Article." *Feacher v. Intercontinental Hotels Grp.*, 563 F. Supp. 2d 389, 407 (N.D.N.Y. 2008) (citation omitted); *see also Silver v. Equitable Life Assurance Soc'y*, 563 N.Y.S.2d 78, 80 (1st Dep't 1990) ("The IAS Court properly dismissed plaintiffs' cause of action under Civil Rights Law § 40-c for plaintiffs' failure to meet the statutory requirements of notice to the Attorney General as specifically required by New York Civil Rights Law § 40-d.").

Here, Plaintiff has not alleged and cannot allege that he complied with this requirement, compelling the dismissal of Counts VII, VIII, and IX of Plaintiff's Complaint with prejudice.

## VI. The New York City Human Rights Law, NYC Administrative Code 8-107 (Counts X & XI)

NYC Administrative Code 8-107(4) states, in relevant part, "[i]t shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation: Because of any person's actual or perceived race, creed, [or] national origin . . directly or indirectly: To refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation." NYC Administrative Code 8-107(4). NYC Administrative Code 8-107(6) reads: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." NYC Administrative Code 8-107(6). As set forth above, claims under NYCHRL § 8-107 are analyzed identically to Section 1981 claims. *See Henry*, No. 10-CV-03682 (RRM) (MDG), 2013 U.S. Dist. LEXIS 124939, at *41-42.

Accordingly, for the same reasons as set forth in Section I(A)-(B), *supra*, Counts X & XI of Plaintiff's Complaint must respectfully be dismissed.

## VII. Tortious Interference with Contract (Count XII) (incorrectly identified as a claim for violation of New York City Human Rights Law, NYC Administrative Code 8-107)

To state a claim for tortious interference with contract against Defendant, Plaintiff must allege that: (1) the contract existed between Plaintiff and LMBM; (2) Defendant knew about the contract; (3) Defendant intentionally and without justification induced LMBM to breach the contract; (4) LMBM breached the contract; and (5) he suffered damages as a result. *See Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 336

(S.D.N.Y. 2012). Additionally, tortious interference must involve "a *non-party* improperly interfering with a contract between two contracting parties." *Scuderi v. Springer*, No. 03 Civ. 2098 (RO), 2004 U.S. Dist. LEXIS 23867, 2004 WL 2711048, at *2 (S.D.N.Y. Nov. 29, 2004); *see also IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 407 (S.D.N.Y. 2009) ("[T]he general rule is that a claim for tortious interference will lie only against a stranger who improperly interferes with a contract between two contracting parties."). An agent of one of the contracting parties is generally not a stranger to the contract. *See Minetos v. City Univ. of N.Y.*, 925 F. Supp. 177, 187-88 (S.D.N.Y. 1996) ("[A]n agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he [or she] is acting on behalf of his principal and within the scope of his authority." (alteration in original) (citation omitted)). Additionally, an employee of a party is not a stranger to the contract unless the employee "has exceeded the bounds of his or her authority." *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996).

In this case, Plaintiff admits that Defendant is a Tournament Organizer for LMBM. *See* ECF Doc. No. 1 at ¶ 6. Plaintiff further acknowledges that LMBM's owner contacted the LMBM TOs regarding Plaintiff's ban, asked for information regarding how the decision to ban Plaintiff was arrived at, and asked the LMBM TOs to look for relevant codes of conduct for the tournament. *See* ECF Doc. No 1 at ¶¶ 35, 38-39. Plaintiff does not allege that the LMBM TOs were acting outside of their authority as agents of LMBM, and in fact the owner of LMBM consulted with them about the decision.

Accordingly, Defendant cannot, as a matter of law, be liable for tortiously interfering with the alleged contract between LMBM and Plaintiff, compelling the dismissal of Count XII with prejudice.

## VIII. <u>Plaintiff's Complaint Should Be Dismissed with Prejudice</u>

As a general matter, under Federal Rule of Civil Procedure 15(a)(2), "[l]eave to amend is to be freely given when justice requires." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 140 (2d Cir. 2013). "[I]t is within the sound discretion of the court whether to grant leave to amend." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 280, 281 (S.D.N.Y. 2010) (quoting *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994)). Courts will deny leave to amend in cases of, among other things, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and/or] futility of amendment." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (internal citation omitted).

In this case, affording Plaintiff yet another opportunity to amend his Complaint for the third time would be futile and unjust. Plaintiff has no basis to allege that Defendant was aware that he was Jewish before the decision to ban him from the LMBM tournament was made, nor can Plaintiff change his admission to the existence of a non-discriminatory basis for his ban. There are no facts that would change the law that a Zionist is not a protected class. Likewise, Plaintiff cannot change the fact that the alleged discriminatory conduct was a one time event, not subject to prospective injunctive relief. Amendment to the Complaint would not cure Plaintiff's failure to serve notice on the attorney general as required to pursue a claim under N.Y. Civil Rights Law § 41. Moreover, as set forth above, although this case is new, Plaintiff's claims against Defendant certainly are not. Plaintiff has had three opportunities to amend and cure his complaint in the Initial Action, yet instead of following the court's Order in the Initial Action to file an amended complaint in response to Defendant pre-motion letter to dismiss, and after

advising the court that he would be filing an amended complaint by November 11, 2025, Plaintiff then decided to dismiss Defendant from the Initial Action and start all over again by filing the Complaint in this action. Therefore, Plaintiff has already been afforded numerous opportunities to amend his Complaint, so if the Court finds that dismissal is warranted, such dismissal should be with prejudice.

**CONCLUSION**

For the foregoing reasons, the Defendant respectfully requests that the Court grant his Motion to Dismiss Plaintiff's Complaint with prejudice.

**NEXTGEN COUNSEL LLC**
*Attorneys for Defendant Maximillian Krchmar*

*/s/Michael H. Ansell*
BY: MICHAEL H ANSELL, ESQ.

Dated: March 25, 2026

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT/TYPE FACE

This brief complies with the type-volume limitation of S.D.N.Y. Local Rule 7.1(c) because the brief contains 7875 words (as calculated by Word software), excluding the parts of the brief exempted by S.D.N.Y. Local Rule 7.1(c).

This brief complies with the typeface and formatting requirements of S.D.N.Y. Local Rule 7.1(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 12-point font, and is double-spaced, except for the parts of the brief exempted by S.D.N.Y. Local Rule 7.1(b).

**NEXTGEN COUNSEL LLC**
*Attorneys for Defendant Maximillian Krchmar*

*/s/Michael H. Ansell*
BY: MICHAEL H ANSELL, ESQ.

Dated: March 25, 2026