# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **FELIX HASSON**<br><br>*Plaintiff,*<br><br>v.<br><br>**WAYPOINT MEDIA CAFE LLC**<br>**FAWN CHANDLER**<br>**UNKNOWN DEFENDANTS 3**<br>**UNKNOWN DEFENDANTS 4**<br>**GEOFFREY TIRRELL**<br>**MAXIMILLIAN KRCHMAR**<br>**JONATHAN MENDEZ**<br>**UNKNOWN DEFENDANTS 2**<br>**JORDAN RUSSELL**<br>**JETT LEWIS**<br>**THOMAS FREDRICKSON**<br>**ANDREW SORENSEN**<br>**NOAH VILLENEUVE**<br>**UNKNOWN DEFENDANTS 7**<br>**UNKNOWN DEFENDANTS 8**<br><br>*Defendants.* | **Case No. 1:24-cv-09693**<br><br>**Jury Trial Demand** |



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

## SECOND AMENDED COMPLAINT (VERIFIED)

Plaintiff Felix Hasson (hereinafter "Plaintiff") by and through his undersigned counsel, hereby files this Second Amended Complaint, as a matter of course under F.R.C.P. 15(a)(1)(B) and pled under oath as a Verified Complaint, against Defendants Waypoint Media Cafe LLC d/b/a Waypoint Cafe NYC ("Waypoint"), Fawn Chandler, Unknown Defendants 3, Unknown Defendants 4, Geoffrey Tirrell, Maximillian Krchmar, Jonathan Mendez, Unknown Defendants 2, Jordan Russell, Jett Lewis, Thomas Fredrickson, Andrew Sorensen, Noah Villeneuve, Unknown Defendants 7, and Unknown Defendants 8, for violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982; N.Y. Civ. Rights Law §§ 40, 40-c, and 41; the New York City Human Rights Law, NYC Administrative Code 8-107; New York Executive Law § 296; and common law breach of contract to recover monetary damages, attorney's fees, costs and obtain injunctive and declaratory relief.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 as the action arises under, inter alia, 42 U.S.C. § 2000a and 42 U.S.C. § 1981, laws of the United States, and all other claims are part of the same case or controversy pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendants have conducted business in this judicial district and may be found conducting business in this judicial district.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

3. On or about the date of filing the Complaint, Plaintiff sent a copy to the New York State Division of Human Rights and the New York City Commission on Human Rights to provide notice of the violations described herein.

**PARTIES**

4. Plaintiff Felix Hasson is a natural person. He is a professional videogamer whose game of choice is Super Smash Brothers Ultimate ("Smash"). He was banned from a number of Smash tournaments and related venues on the basis of his Jewish racial, religious, and national origin identity.

5. Defendant Waypoint is a domestic limited liability company doing business and located at 65 Ludlow St, New York, NY 10002. Waypoint is an internet and gaming cafe open to the general public, which functions as a restaurant and a host of gaming events. Waypoint has banned Plaintiff from competing in its Smash tournaments and patronizing its establishment on the basis of his Jewish racial, religious, and national origin identity.

6. Defendant Fawn Chandler is a natural person and tournament organizer ("TO") affiliated with Waypoint, whose address is presently unknown, and who, along with other TOs and agents of Waypoint described below as Unknown Defendants 3, made the decision to ban Plaintiff from Waypoint and its Smash tournaments on the basis of his Jewish racial, religious, and national origin identity.

7. Unknown Defendants 3, who along with Chandler made the decision to ban Plaintiff from Waypoint on the basis of his Jewish racial, religious, and national origin identity, are currently unknown to Plaintiff in name and address. However, their identities can be obtained through discovery or subpoena of Waypoint and Chandler.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

8. Unknown Defendants 4 contacted Waypoint and its tournament organizers to request or otherwise incite the banning of Plaintiff from Waypoint on the basis of his Jewish racial, religious, and national origin identity. They can be identified and their addresses can be ascertained through discovery and/or subpoenas directed at the persons and entities involved with Waypoint such as its ownership, their tournament organizers, and its TOs.

9. Defendant Geoffrey Tirrell is a natural person. He served as a TO for the Luminosity Makes Big Moves Smash tournament ("LMBM") held at the New Yorker Hotel, 481 8th Ave, New York, NY 10001, and in coordination with Defendant Krchmar, banned Plaintiff from LMBM on the basis of his Jewish racial, religious, and national origin identity. While Tirrell is no longer affiliated with LMBM, he continues to serve as an administrator or TO at Smash tournaments across the country that Plaintiff intends to attend.

10. Defendant Maximillian Krchmar is a natural person. He serves as a TO for the annual LMBM, and in coordination with Defendant Tirrell, banned Plaintiff from LMBM on the basis of his Jewish racial, religious, and national origin identity. Unlike Tirrell, Krchmar continues in his LMBM TO role and Plaintiff intends to attend the 2026 LMBM.

11. Defendant Jonathan Mendez is a natural person, possibly living abroad and whose address is presently unknown, who requested or otherwise incited the banning of Plaintiff from LMBM on the basis of his Jewish racial, religious, and national origin identity.

12. Unknown Defendants 2, who, like Mendez, contacted the LMBM organizers to request or otherwise incite the banning of Plaintiff from LMBM on the basis of his Jewish racial, religious, and national origin identity. They are currently unknown. However, their identities can be determined through discovery and/or subpoenas directed at the LMBM TOs.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

13. Defendant Jordan Russell is a moderator on the Smash Crew Server ("SCS") on the online platform Discord. Defendant Russell conferred with fellow SCS moderators and collectively banned Plaintiff from the server on the basis of his Jewish racial, religious, and national origin identity.

14. Defendant Jett Lewis is a moderator on the Smash Crew Server ("SCS") on the online platform Discord. Defendant Lewis conferred with fellow SCS moderators and collectively banned Plaintiff from the server on the basis of his Jewish racial, religious, and national origin identity.

15. Defendant Thomas Fredrickson is a moderator on the Smash Crew Server ("SCS") on the online platform Discord. Defendant Fredrickson conferred with fellow SCS moderators and collectively banned Plaintiff from the server on the basis of his Jewish racial, religious, and national origin identity.

16. Defendant Andrew Sorensen is a moderator on the Smash Crew Server ("SCS") on the online platform Discord. Defendant Sorensen conferred with fellow SCS moderators and collectively banned Plaintiff from the server on the basis of his Jewish racial, religious, and national origin identity.

17. Defendant Noah Villeneuve is a moderator on the Smash Crew Server ("SCS") on the online platform Discord. Defendant Villeneuve conferred with fellow SCS moderators and collectively banned Plaintiff from the server on the basis of his Jewish racial, religious, and national origin identity.

18. Unknown Defendants 7, who are two presently unknown individuals, conferred and decided collectively with aforestated SCS moderators to ban Plaintiff from the SCS Discord server on the basis of Plaintiff's Jewish racial, religious, and national origin identity. Their



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

identities are believed to be known to aforestated named SCS moderators. One of these two Unknown Defendants is partially named Josh H. and goes by "dogcowy" on Discord. The other goes by "probablynotepic" on Discord.

19. Unknown Defendants 8, who are presently unknown, are believed to have requested or otherwise incited the banning of Plaintiff from the SCS Discord server on the basis of his Jewish racial, religious, and national origin identity.

## FACTS

**Plaintiff's Gaming History and Success**

20. Plaintiff Felix Hasson is an American competitive video gamer specializing in Super Smash Brothers Ultimate.

21. Smash is a platform-based fighting game made by Nintendo in which players use iconic video game characters to fight each other and try to knock their opponents off of the screen. There are eighty-nine characters to choose from, each with their own unique abilities and tools that players can use to outplay their opponents.

22. Plaintiff began competitive gaming in or around 2015, playing online tournaments in or around 2020, and in-person tournaments in or around 2021. By or around 2022, he was ranked #3 in Israel, where he resided during a gap year from his education, and he was highly competitive for the #1 spot.

23. Following Plaintiff's gap year, he returned to the United States and competed in local, regional, and national tournaments in New York, Texas, Florida, and California. By or around 2023, Plaintiff was ranked #1 at Rice University, and is currently the 23rd best player in the world among players who play as Terry, one of the characters players can select.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

24. In or around 2024, Plaintiff was invited by Nintendo as one of six players to compete in the Smash Brothers Ultimate Championship 2024 in San Francisco after placing first in the Southwest North American Qualifier.

25. Over the course of his career, Plaintiff has won prize money, gaming equipment, trophies, and additional items. He estimates the total value of his winnings at around $7,000.

**Plaintiff's Outspoken Support for and Affinity to His Ancestral Homeland of Israel and His Opposition to Those Who Seek its Destruction**

26. Plaintiff is a Jewish-American who feels and publicly expresses a deep affinity for Israel, his family's ancestral homeland. While Plaintiff and his family have lived outside of Israel for countless generations, Plaintiff identifies Israel as his ultimate place of national origin. His racial and religious identities as a Jew are also intimately connected to Israel. The terms "Jew," "Jewish," and "Judaism" come from the word "Judea," an important part of historic Israel.

27. Plaintiff is a Zionist, that is an adherent of the "international movement originally for the establishment of a Jewish national or religious community in Palestine and later for the support of modern Israel."[1] Plaintiff's Zionism as detailed herein, which has its roots in millennia of Jewish tradition, is both a sincerely held religious belief for him and otherwise inseparable from his Jewish race and national origin.

28. Plaintiff's connection to and support of Israel is neither idiosyncratic nor can it be chalked up to mere politics; it is at the core of what makes Plaintiff (and millions of others) Jewish. The Bible itself references this ancient Jewish hope[2] for a Jewish state while the Prophets and Writings of the Hebrew Bible repeatedly record this aspiration.[3] From a Jewish law perspective, over half of the Biblical commandments that religious Jewish people are bound to

[1] https://www.merriam-webster.com/dictionary/Zionism
[2] *See e.g.*, *Deuteronomy* 30:1-5
[3] *See e.g.*, *Isaiah* 11:11-12; *Jeremiah* 29:14; 20:41-42; *Psalm* 126; *Psalm* 137.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

obey are specifically tied to the Jewish homeland.[4] From a doctrinal point of view, belief in and hope for the return to Zion (Israel) is literally part of the 13 Principles of Jewish Faith.[5]

29. Indeed, the Jewish religion is predicated on the belief that God promised Abraham that he and his descendants shall live in and maintain sovereignty over the Land of Israel,[6] which they currently do as the State of Israel, and much of the narrative portions of the Torah and greater Jewish Bible detail the tribulations Jews experience when they do not have sovereignty over this land and their resulting struggle to achieve and maintain such sovereignty. Even from a purely secular perspective, this connection to Israel is a core feature of the cultural identity of those of Jewish national origin and race like Plaintiff. Whether one views Plaintiff's Judaism through the prism of religion, race, or national origin, Jewish sovereignty and self-determination in Israel is core to all three identities.

30. In pursuit of his ancestral, racial, and religious connection to Israel, Plaintiff first visited Israel in or around 2015 and thereafter spent a gap-year there from approximately August 2021 to June 2022, where he studied Jewish scripture and participated in technology internships.

31. On or about September 13, 2021, Plaintiff posted on X, then Twitter, "in the west bank bumpin carti . . . i got to introduce these settlements to off the grid" ("*Donda* Tweet"). Below this tweet, he posted a photograph of the Greek god Prometheus giving man fire. *See* Exhibit 1 at 1. At the time, Plaintiff was on a hike in Judea and Samaria—sometimes called the "West Bank"—at Wadi Qelt. Listening to the just released *Donda* music album, Plaintiff joked that he was like Prometheus by introducing a paradigm-shifting album to the backwoods of Israel. Plaintiff's tweet served as a celebration and affirmation of his connection to his ancestral

---

[4] *About Us,* TORAH VEHA'ARETZ INSTITUTE, https://en.toraland.org.il/about/.

[5] *Maimonides Introduction to Perek Helek,* MAIMONIDES HERITAGE CENTER, https://www.mhcny.org/qt/1005.pdf. (explaining the 12th Fundamental Principle).

[6] Genesis 12:1-9.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

homeland and the time he was spending there. As noted, the region he hiked, Judea, is of the root word for the term "Jew."[7]

32. On or about, July 27, 2022, the Israel Defense Forces ("IDF") participated in a popular meme trend by featuring characters from the "Mr. Man" and "Little Miss" children's book series in a post on its official Twitter account.[8] Plaintiff responded to a retweet of this meme with his own, showing an image of a man with an exaggerated square jaw, known in meme culture as a "Chad," which is intended to symbolize confidence and strength, backdropped against an Israeli flag ("Chad Tweet"). Plaintiff wrote "based idf." *See* Exhibit 1 at 2. Plaintiff's tweet served a celebration and affirmation of his connection to his ancestral homeland of Israel, the time he spent there, and those who defend it from anti-Semitic aggression.

33. The concept of a Jewish warrior class (like the IDF) and national defense of the Land of Israel are as integral to Plaintiff's Jewish religion, race, and national origin as the land of Israel is itself. Indeed, from a biblical or Jewish cultural narrative perspective, the first Jewish army is described a mere two chapters after the Torah details God's promise of Israel to Abraham.[9]

34. All of the doctrinal aspects of Judaism described at length herein, including Plaintiff's Zionism, form a core part of Plaintiff's sincerely held religious beliefs.

35. On or around January 19, 2023, an X user tweeted a graph of the most popular Smash characters in every country, including "Palestine," a proposed state including Gaza and parts of the West Bank, even though there are no tournaments held in Gaza or the West Bank. Plaintiff

---

[7] *See* Encyclopedia Britannica, *Jew,* (last checked Nov. 28, 2024), https://www.britannica.com/topic/Jew-people ("The term Jew is thus derived through the Latin Judaeus and the Greek Ioudaios from the Hebrew Yĕhūdhī. The latter term is an adjective occurring only in the later parts of the Hebrew Bible and signifying a descendant of Yehudhah (Judah), the fourth son of Jacob, whose tribe, together with that of his half brother Benjamin, constituted the Kingdom of Judah.").

[8] https://x.com/brndxix/status/1552174831201812480 (Jul. 27, 2022).

[9] Genesis 14:14 ("And Abram heard that his kinsman had been taken captive, and he armed his trained men, those born in his house, three hundred and eighteen, and he pursued [them] until Dan.").



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

retweeted this post and wrote "gaza has a smash scene?" Another user replied to Plaintiff that Palestinians are probably not good at the game, and Plaintiff responded "palestine so free." Plaintiff also noted that it would be ironic if the character most frequently used by Palestinians used bombs as their weapon of choice ("Rocket Tweets"), an allusion to the fact that Hamas, the popularly supported governing regime in Gaza, had fired thousands of bombs at Israeli civilians since gaining control of Gaza in 2007 and previously employed suicide bombings against Israeli civilians, all with the popular support of the Palestinian people. *See* Exhibit 1, at 3.

36. On or about October 7, 2023, in response to Hamas's invasion of, and its massacre of over 1,200 people in Israel, Plaintiff tweeted "gaza got something big coming their way for sure" ("October 7 tweet"). *See* Exhibit 1, at 4. Plaintiff offered this commentary as an obvious and predictive geopolitical observation, which of course turned out to be correct.

37. On or about December 20, 2023, Plaintiff replied "LMAOOOO," a slang expression used on social media platforms to denote laughter, to a screenshot of X-user @Selwan_i's celebratory tweet on October 7, juxtaposed against her December 16, 2023 tweet noting that she lost everything ("LMAO tweet"). *See* Exhibit 1, at 5. Plaintiff wrote his response in support of the people in his ancestral homeland and in opposition to those, like @Selwan_i, who celebrate terrorism committed against them.

38. As a result of Plaintiff's above detailed Judaism and Zionism, and his related public celebration and support of his Jewish race, religion, and national origin, Plaintiff was banned from a number of Smash tournaments and related places of public accommodation. These venues, however, continue to admit non-Jews espousing well-established anti-Semitic views.[10]

[10] Antisemitism is defined in detail by The International Holocaust Remembrance Alliance ("IHRA"), a multi-governmental organization with 35 member countries, including the United States, with a mission "to strengthen, advance and promote Holocaust education, remembrance, and research worldwide." *See* International Holocaust Remembrance Alliance, *About The International Holocaust Remembrance Alliance* (last visited Nov. 19, 2024), https://holocaustremembrance.com/who-we-are. Recognized as a "vital tool in the struggle against antisemitism" by the New York Governor's office (*See* Proclamation of Governor Kathy Hochul (Jun. 12, 2022),



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

**Plaintiff's Ban from LMBM**

39. On or about December 20, 2023, Defendant Jonathan Mendez posted screenshots of Plaintiff's *Donda*, Chad, Rocket, and October 7 tweets and, directing his tweet to Maximillian Krchmar (X handle @MaxKetchum_), Cyrus Gharakhanian (X handle @Cagt3000), and Geoffrey Tirrell (X handle @Aerodusk), the LMBM TOs, asked "why is this racist zionist weasel allowed at your events?"[11] Mendez further tweeted "how is any Palestinian supposed to feel safe at your major when people who relish in and cheer for the complete extermination of their friends and family are allowed in the same space? Genuine question[.] [T]his goes beyond smashy bros, LMBM should be a safe space for everyone."[12] "israel is committing genocide and anyone who cheers it on should be treated with appropriate scorn."[13] *See* Exhibit 2.

40. Mendez resorted to a well-known antisemitic trope, echoing Nazi talking points, by referring to Plaintiff as a type of animal.[14] None of Plaintiff's tweets indicated a desire to harm anyone, regardless of ethnicity. None of Plaintiff's tweets relished in or cheered the loss of

---

https://www.governor.ny.gov/sites/default/files/2022-06/IHRA_Antisemitism_Definition_Proclamation-2022.pdf), IHRA defines antisemitism as encompassing, inter alia, "making mendacious, dehumanizing, demonizing, or stereotypical allegations about Jews as such or the power of Jews as collective — such as, especially but not exclusively, the myth about a world Jewish conspiracy or of Jews controlling the media, economy, government or other societal institutions ("Jews Control the World Trope"); accusing Jews as a people of being responsible for real or imagined wrongdoing committed by a single Jewish person or group, or even for acts committed by non-Jews ("Collective Responsibility Trope"); denying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor ("Jewish Self-Determination Denial"); using the symbols and images associated with classic antisemitism (e.g., claims of Jews killing Jesus or blood libel) to characterize Israel or Israelis ("Blood Libel Trope"); and drawing comparisons of contemporary Israeli policy to that of the Nazis ("Holocaust Inversion")." International Holocaust Remembrance Alliance, *Working Definition of Antisemitism* (last visited Nov. 19, 2024), https://holocaustremembrance.com/resources/working-definition-antisemitism (cleaned up). As of August 2024, 35 States and the District of Columbia have adopted IHRA, including Texas and New York. American Jewish Committee, *Use of the Working Definition in the U.S.* (last visited Nov. 19, 2024), https://www.ajc.org/use-of-the-working-definition-in-the-us.

[11] https://x.com/Bravo_irl/status/1737605631266218252 (Dec. 20, 2023) is the original url. Mendez has since deleted his Twitter plaintiff retains screenshots.

[12] https://x.com/Bravo_irl/status/1737605634340876518 (Dec. 20, 2023) is the original url. Mendez has since deleted his X. Plaintiff retains screenshots.

[13] https://x.com/Bravo_irl/status/1737820454075666839 (Dec. 20, 2023) is the original url. Mendez has since deleted his X. Plaintiff retains screenshots.

[14] https://english.elpais.com/society/2022-12-04/how-nazi-propaganda-dehumanized-jews-to-facilitate-the-holocaust.html ("Rats, lice, cockroaches, foxes, vultures – these are just some of the animals the Nazis used to deride and dehumanize Jews.").



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

innocent Palestinian life in Gaza or otherwise advocated for the "extermination" of any group of people. The LMBM TOs knew of Mendez's fabrications because Mendez directed them to Plaintiff's tweets described above.

41. Several hours after Mendez's Zionist Weasel tweet, Tirrell linked to it in a Facebook group chat that included Krchmar and Gharakhanian, the other LMBM TOs. Tirrell posted a screenshot of a final confirmation screen to remove Plaintiff from LMBM, asking "Are you sure you want to remove [Plaintiff]." Krchmar approved, noting "Yeah I'm with it." Tirell said "removing this weirdo from the bracket," referring to Plaintiff. Krchmar responded "Rip Bozo." Exhibit 3 at 1-2. Gharakhanian posted a screenshot of Plaintiff attempting to establish communication with him via X. In Plaintiff's message to Gharakhanian, made available to Tirrell and Krchmar in the group chat, Plaintiff wrote:

> As a Jew I have a strong allegiance to my ethnic homeland and I am very much on the side of my people during this war. I have many friends and family currently fighting in the IDF and I take what's happening over there very seriously. I am a Zionist and a proud supporter of the state of Israel, and that opinion should not have any effect on my ability to compete in tournaments. If you have any concerns over possible safety issues, I can assure you that I am not a danger to anyone . . . and I treat everyone with the same respect that is given to me in return. You can ask any player or TO that has ever spoken with me and they would all say the same thing. I've been removed from LMBM for being a "Zionist weasel" and if that's not a crazy sentence then I don't know what is. I ask you to please reconsider the decision to remove me from LMBM, regardless of what your thoughts are on the war in Israel. Smash has nothing to do with my support for my people in the fight against terrorism.

(cleaned up). *Id.* at 5-9. Gharakhanian mocked Plaintiff multiple times for his messages. *Id.* Krchmar wrote "Homie is definitely a Zionist weasel," echoing Mendez's antisemitic slur. *Id.* at 8. Tirrell then posted portions Plaintiff's messages to him, noting:



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

> This is also a huge double standard because I'm sure you can find plenty of people who are entered in LMBM that have said some really nasty things about Israel. Bravo, who has never even spoken to me or met me, called me a Zionist weasel and nothing happens. It's just kind of crazy that I get instabanned over something like this.

*Id*. at 10-12. An earlier portion of Plaintiff's message to Tirrell, which Tirrell seemingly did not send to his colleagues, read as follows:

> I just want to say that as a Jew who has lived in Israel I have a very strong connection to my peoples' homeland. Personally I have a lot of close friends and family members currently fighting in the IDF and I take everything that's going on over there very seriously. I am a proud Zionist and that should not have any impact on my ability to enter a videogame tournament. If you have any possible concerns about safety, I can assure you that I am not a danger to anyone and wouldn't cause any problems at an event. Any TO or player that has ever met me would testify that I would never do anything to endanger the safety of others.

Exhibit 4 at 1-2. None of them ever responded to Plaintiff, even after Plaintiff had advised Gharakhanian and Tirrell (who advised Krchmar) that he was being targeted due to his Jewish identity.[15]

42. In a direct quote-tweet to Mendez's antisemitic Zionist Weasel Tweet, Tirrell announced that Plaintiff had been "removed."[16] *See* Exhibit 5. This tweet remains publicly available with over 28,000 views. In broadcasting Mendez's racial slur in his quote-tweet, Tirrell did not indicate any umbrage with the racial slur and instead only confirmed that he acceded to Mendez's request. Tellingly, he did not quote-tweet Mendez's feigned safety concerns about having a Plaintiff at a tournament but rather Mendez's initial tweet simply requesting Plaintiff's ban on grounds that Plaintiff is a "Zionist weasel," as exhibited by Plaintiff's public support of Israel on X.

[15] Please note that in Exhibit 2, Tirrell is identified as "Geoffrey," Krchmar as "Mr. Gamer," and Gharakhanian as "Cyrus."

[16] https://x.com/Aerodusk/status/1737653251481424157 (Dec. 20, 2023).



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

43. Mendez was not the only person who contacted or otherwise encouraged or incited LMBM's organizers to ban Plaintiff from the tournaments on grounds related to his race, religion, and national origin. In the above described Facebook group chat, Tirrell noted that "80 million" other individuals directed him to Mendez's Zionist Weasel Tweet. Exhibit 3 at 2. These other individuals, herein referred to as Unknown Defendants 2, were also involved in this conduct. Their identities can be obtained through discovery and subpoenas of the LMBM TOs.

44. On February 2, 2025, LMBM's owner contacted the LMBM TOs and asked if they could provide him with details on Plaintiff's ban. In response, Krchmar provided a single screenshot of their Facebook group communication in which Tirrell shared Mendez's Zionist Weasel Tweet. Krchmar omitted both the portion of the chat in which he echoed Mendez's racial slur and the screenshots of Plaintiff's attempts to explain that he was being targeted because of his Jewish identity. Krchmar noted "this was literally all the deliberation done," a falsehood as the deliberations carried on and included the aforementioned portions. Gharakhanian acknowledged that Plaintiff had attempted to reach out to him. Tirrell sent a link to his tweet announcing Plaintiff's ban and falsely claimed that his tweet and Krchmar's single screenshot were Tirrell's "entire contribution." LMBM's owner noted Tirrell's retweet of Mendez's Zionist Weasel Tweet in announcing Plaintiff's ban could be viewed as hate speech on Tirrell's end. Krchmar suggested spinning Plaintiff's ban as not involving his Zionism, with Krchmar failing to note that he himself called Plaintiff a Zionist weasel. Later on in the dialogue, Krchmar again represented to LMBM's owner that Plaintiff was not banned for being Jewish or a Zionist, again omitting his use of an antisemitic racial slur when discussing Plaintiff's ban. In this dialogue, the LMBM TOs also searched for but failed to find a relevant code of conduct that would have supported Plaintiff's ban.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

45. The LMBM TOs not only directly targeted Plaintiff because of his Jewish racial, religious, and national origin identity, but they also treated him differently than many non-Jews, as Plaintiff alluded to in his message to Tirrell, allowing these individuals to continue participating in, and in some cases working for LMBM despite public proclamations of anti-Semitism.

46. For example, at no point did the other LMBM TOs (Tirrell) ban Krchmar from any events despite his history of anti-Semitism, including his racial slur in their group chat, as well as tweets such as a June 21, 2020 tweet in which he noted, "You know Israel is evil when the only candidate who even dared to speak out against them was the Jewish guy who isn't bought and paid for,"[17] a reference to Senator Bernie Sanders and an allusion to the Jews Control the World Trope. Krchmar has also targeted other ethnicities for stereotyping, for example noting "White people will do shit like this and then be too scared to try Indian food"[18] on or about September 6, 2020 and "Why do white people do shit like tying red white and blue balloons to their mailboxes on July 4th" on or about July 4, 2021.[19] Krchmar participated in the January 2024 LMBM.[20]

47. Similarly, the LMBM TOs have never banned Mendez from any gaming events despite his routine false and anti-Semitic accusations that Israel is committing genocide (Holocaust Inversion) and use of the term "Zionist" as a pejorative. Mendez has retweeted a photo of Holocaust concentration camp survivors with the commentary "never again (unless we get to do it)," retweeted posts supporting the legitimization of Hamas (noting it is "not something that needs to be excused"), and retweeted conspiracy theories asserting that "many if not most non-combatants killed on [Oct. 7] were killed by the IOF." IOF is an abbreviation of "Israeli

[17] https://x.com/MaxKetchum_/status/1274761361357254656.
[18] https://x.com/MaxKetchum_/status/1302650775286538240 (Sept. 6, 2020).
[19] https://x.com/MaxKetchum_/status/1411760951720824832 (July 4, 2021).
[20] https://www.start.gg/user/8c016d48/results.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

Occupation Force," a slur used against the IDF to portray it as an entity of an illegitimate colonialist regime and thus this slur constitutes Jewish Self-Determination Denial. Mendez indicated that it was Israel rather than Hamas who killed most of the Israelis on October 7. Mendez has endorsed similar anti-Semitic sentiments by retweeting posts referring to those in Israel's internationally recognized borders as "settler civilians" in "occupied lands" who act as "colonial oppressors." Mendez competed in the January 2024 LMBM.[21]

48. The LMBM TOs have never banned Mohammed Farraj (X handle @MomoOnTheMic), who also provides analysis and commentary at LMBM and has engaged in Holocaust Inversion by falsely accusing Israel of genocide and Plaintiff of supporting said "genocide."[22]

49. The LMBM TOs have never banned Shoaib Rasooli, who competes under the name "Sho" and tweets under the handle @Shoflowers, despite his history of anti-Semitic posts, including false accusations that Israel is engaging in genocide and that Plaintiff is enthusiastic about said "genocide."[23] Rasooli publicly made these comments to LMBM tournament organizer Tirrell, the individual who announced Plaintiff's ban via X. Rasooli competed in the January 2024 LMBM.[24]

50. Finally, the LMBM TOs have never banned Justin Jones, who competes as "Crowsong," despite his history of engaging in anti-Semitism by making false accusations that Israel is committing genocide, which is a form of Holocaust Inversion.[25] He has also spoken pejoratively

---

[21] After learning of this litigation, Mendez removed public access to his social media. Plaintiff retains screenshots of many of his relevant posts.
[22] *See, e.g.*, https://x.com/MomoOnTheMic/status/1737883808026783834 (Dec. 21, 2023); https://x.com/MomoOnTheMic/status/1744085430092403142 (Jan. 7, 2024); https://x.com/MomoOnTheMic/status/1776621503775228032 (Apr. 6, 2024).
[23] https://x.com/Shoflowers/status/1737747718162772422 (Dec. 21, 2023); for additional genocide accusations *see, e.g.*, https://x.com/Shoflowers/status/1762258085127590200 (Feb. 26, 2024).
[24] https://smashdata.gg/smash/5/player/Sho?id=29992.
[25] *See e.g.*, https://x.com/The_Crowsong/status/1750662267538932073 (Jan. 25, 2024); s*ee also* https://x.com/The_Crowsong/status/1737213058592674062 (Dec. 19, 2023) (falsely accusing Israel of "ethnic cleansing").



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

about other ethnicities, namely White people, noting "[t]he bible is just god telling people to commit genocide in one half and white people misinterpreting jesus in the other."[26] Crowsong competed in the 2024 and 2025 LMBMs.[27]

51. To the extent that the LMBM TOs claim they banned Plaintiff for suspected violations of a neutrally applied "hate speech" policy, this position is false. There was nothing hateful about Plaintiff's tweets. Moreover, LMBM has welcomed aforementioned non-Jews engaging in "hate speech" in the form of anti-Semitic tropes, thus applying a discriminatory double standard to Plaintiff because he is Jewish. Finally, as described above, the LMBM TOs were unable to find a relevant code of conduct covering Plaintiff's tweets.

52. LMBM is held at the New Yorker Hotel, 481 8th Ave, New York, NY 10001, functioning both as a hotel and as made clear by LMBM's presence, a place of exhibition or entertainment.

53. As hosts of LMBM on the hotel's premises, the LMBM TOs had the authority to admit or deny individuals access to LMBM and associated amenities such as discounted lodging at the New Yorker Hotel and wielded such authority in denying Plaintiff admission.

54. Participation in LMBM hinged on a contract whereby, for consideration of a participant's agreement to adhere to certain rules and policies, in addition to paying a registration fee, which for Plaintiff was $110, the LMBM TOs granted admission to compete in LMBM. LMBM offered this ability to contract for the aforementioned to the general public but denied this ability to Plaintiff, a Jewish person. In fact, the TOs accepted Plaintiff's registration fee, but wrongfully denied him admission without refunding Plaintiff.

[26] https://x.com/The_Crowsong/status/1582356138146037761 (Oct. 18, 2022).
[27] https://smashdata.gg/smash/ultimate/player/Crowsong?id=328844; https://www.start.gg/user/6d7c6f41/results?page=3. Please note Crowsong has recently been playing under the name "'05 Matt Hasselback."



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

55. LMBM featured an "artist alley" where participants could purchase tournament souvenirs, such as unique art. However, because Plaintiff was banned from LMBM, he was deprived of the opportunity to make such purchases.

56. Plaintiff intends to seek admission and compete in the 2026 LMBM.

**Plaintiff's Ban from Waypoint**

57. On or about December 25, 2023, Plaintiff learned that he was banned from Waypoint when he tried to enroll for a weekly tournament and received an error message noting he was banned. Plaintiff verified the ban with Fawn Chandler (X handle @fawnres), Head TO for Waypoint. In addition, Waypoint announced this ban on X in a post in which it falsely accused Plaintiff of "incitement of hate and violence" and noted a purported "zero-tolerance policy for discrimination, bigotry, and violence towards any group of people," and claimed to be "very clear about this in our venue policies."[28] Waypoint further accused Plaintiff of "laughing at the deaths of civilians" and "throwing up gang signs" at Waypoint.[29] As is clear from Plaintiff's LMAO Tweet, he was laughing at someone celebrating October 7th, the worst massacre of Jews since the Holocaust, and later lamenting the collateral damage consequences in response to the atrocity she supported. Waypoint's comment about gang signs was also dishonest.

58. In their direct messages, Chandler clarified that Plaintiff was banned solely for his pro-Israel tweets described above and not for any gang sign misunderstanding. Plaintiff is not a member of a gang. Chandler specifically wrote to Plaintiff "Waypoint Staff itself has seen your tweets and other statements provided to us. Unanimously, the higher-ups agreed in a meeting that type of behavior is not welcome at our venue. This has nothing to do with the gang signs situation and that is water under the bridge."[30]

---

[28] https://x.com/WaypointcafeNYC/status/1740802256155353360 (Dec. 29, 2023).
[29] https://x.com/WaypointcafeNYC/status/1740802257623593008 (Dec. 29, 2023).
[30] Plaintiff retains screenshots of this exchange.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

59. The identities of these additional decisionmakers alluded to by Chandler, Unknown Defendants 3, are presently unknown but can be obtained via discovery and subpoena of Waypoint and Chandler.

60. Waypoint and Chandler were incited to ban Plaintiff by Unknown Defendants 4. Waypoint made this clear on X, noting Plaintiff's "actions concerned multiple members of our community and our staff."[31]

61. Waypoint and associated Defendants not only directly targeted Plaintiff because of his Jewish racial, religious, and national origin identity, but they also treated him differently than many non-Jews, allowing these individuals to continue patronizing Waypoint and participating in their Smash tournaments despite public proclamations of anti-Semitism.

62. Despite its claimed adherence to a zero-tolerance policy on discrimination, Waypoint has never banned Farraj, despite his history of Holocaust Inversion as described above.

63. Waypoint has never banned X user @SonicAdvanced2, who competes at Waypoint as "Dwayne" and has participated in at least thirty-five Waypoint tournaments over the past two years,[32] despite his remarks that Zionism, which is the belief in Jewish self-determination in the indigenous Jewish homeland, is as bad as transphobia.[33] "Dwayne" has also publicly attacked other ethnicities, namely White people by posting, "[s]lavery always gets downplayed by white people they never do that shit with the holocaust."[34]

[31] *Id.*
[32] https://smashdata.gg/smash/5/player/Dwayne?id=1528394 and search for "Waypoint" to see the Waypoint tournaments they have competed in.
[33] No URL available. Plaintiff retains screenshots.
[34]https://x.com/Sonicadvanced2/status/1553885508547317760 (Jul. 31, 2022).



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

64. Waypoint has never banned Rasooli, who most recently competed as "Sho" at Waypoint on or about January 30, 2024,[35] despite his history of anti-Semitic Holocaust Inversion described above.

65. Waypoint has never banned "Crowsong" despite his anti-Semitic Holocaust Inversion and derisive comments about individuals of Caucasian descent described above. Crowsong has played in more than two dozen Waypoint tournaments since around April 2022 and his most recent tournament was on or about August 5, 2025.[36]

66. Finally, Waypoint has never banned Erik Pyshnov, who posts and competes as "Troll_Tactics," despite his public endorsement of the Jews Control The World Trope[37] and his engagement in Holocaust Inversion in the form of false genocide accusations.[38] Pyshnov competed in at least a dozen Waypoint tournaments since Plaintiff's ban, most recently on or about July 29, 2025.[39]

67. To the extent that Waypoint and associated Defendants claim that they maintain their bans against Plaintiff for suspected violations of a neutrally applied "hate speech" policy, and not because he is Jewish, this position is false. Waypoint welcomes non-Jews engaging in anti-Semitic "hate speech" as described above, thus applying a discriminatory double standard to Plaintiff, as opposed to a neutrally applied policy. In fact, one X user, @RaeSkyWalkerP, pointed out Waypoint's double standard of banning Plaintiff but not imposing a ban on Mendez, who

---

[35] https://smashdata.gg/smash/5/player/Sho?id=29992
[36] https://smashdata.gg/smash/ultimate/player/Crowsong?id=328844; https://www.start.gg/user/6d7c6f41/results?page=1. Please note, Crowsong has recently been competing under the name "Matt Hasselback."
[37] https://x.com/Troll_Tactics/status/1717941040059985948 (Oct. 27, 2023) ("Israel lobbies Congress, not the president. The military-industrial complex would sooner die than stop supporting Israel. *The American taxpayer has no choice but to fund genocide*.") (emphasis added).
[38] https://x.com/Troll_Tactics/status/1742685939779178630 (Jan. 3, 2024); https://x.com/Troll_Tactics/status/1771249948022976839 (Mar. 22, 2024); https://x.com/Troll_Tactics/status/1782857266145681573 (Apr. 23, 2024);
[39] https://www.start.gg/user/2347af6d/results (last checked Nov. 22, 2024).



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

engages in Holocaust Inversion and Jewish Self-Determination Denial.[40] Rather than addressing its double standard, Waypoint blocked @RaeSkyWalkerP on the X platform.[41] Plaintiff's father, Laurent Hasson, also noted the double standard and clarified the obvious in asserting that Plaintiff "laughed at the irony of someone celebrating the murder and rape of Jewish women and children and getting their Karma due."[42] Waypoint also blocked Plaintiff's father.[43]

68. Waypoint is an internet and gaming cafe open to the general public, which functions both as a restaurant and place of exhibition and entertainment as evidenced by the tournaments held there. Its address is 65 Ludlow St, New York, NY 10002.

69. As a retail establishment in the business of selling goods and services, including Pokemon cards (that appreciate in value over time like other collector's items), food, and Smash tournament participation, Waypoint offers the general public the ability to contract for said goods and services but denied Plaintiff, a Jewish person, this right.

70. Were it not for the ban, Plaintiff would regularly attend Waypoint's Smash tournaments when he is present in New York City, his hometown where his family lives.

**<u>Plaintiff's Ban from SCS</u>**

71. On or about December 26, 2023, Plaintiff was banned from Smash Crew Server ("SCS") on Discord by its moderators and administrators: Jordan Russell, Jett Lewis, Thomas Fredrickson, Andrew Sorensen, Noah Villeneuve, and Unknown Defendants 7. SCS is the largest online crew league for Smash. Unlike one-on-one Smash gameplay, crew gameplay involves players teaming up to compete against other crews. Players use SCS's Discord server to interact with fellow SCS members and their crews as well as organize games against each other.

[40] https://x.com/RaeSkywalkerP/status/1741635516104143066 (Dec. 31, 2023).
[41] https://x.com/RaeSkywalkerP/status/1741911136386056378 (Jan. 1, 2024).
[42] https://x.com/ldhasson/status/1740835138362118395 (Dec. 29, 2023)
[43] https://x.com/ldhasson/status/1741913072367767562 (Jan. 1, 2024).



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

Plaintiff's ban from SCS made him both ineligible to continue playing in tournaments or to interact with the rest of the SCS community at large on the SCS server. Players on SCS, including Plaintiff, could make arrangements with each other for prize money before a game. Plaintiff's ban therefore also deprived him of a potential source of income by depriving him of the ability to contract for prize money in SCS competition.

72. The Smash teams on SCS varied in terms of prestige as SCS was open to anyone but individual teams had authority over who could join with them. Plaintiff was a member of the Phantasm crew for a little under three years at the time of his ban. Smash players generally considered Phantasm to be a Top 15 team in terms of prestige.

73. Plaintiff became aware of his SCS ban when, on or about January 2, 2024, he attempted to play in a SCS organized tournament, only to be informed by the opposing team that he was on the SCS blacklist. Plaintiff was banned solely for alleged "hate speech on Twitter," as written on the official SCS Blacklist online, rather than any of Plaintiff's communications or content on SCS or Discord as a whole.

74. SCS's moderators and administrators not only directly targeted Plaintiff because of his Jewish racial, religious, and national origin identity, but they also treated him differently than non-Jews, allowing these individuals to continue utilizing SCS despite public proclamations of anti-Semitism.

75. SCS's moderators and administrators have never banned Silas Simpson (X handle @ArbiterSkyward) for his consistent dissemination of anti-Semitic "hate speech" on X, including falsely accusing Israel of genocide, which constitutes Holocaust Inversion,[44] and killing children for fun, echoing the Blood Libel Trope.[45] Simpson has also targeted Plaintiff for

[44] *See, e.g.,* https://x.com/ArbiterSkyward/status/1843798459650060714 (Oct. 8, 2024); https://x.com/ArbiterSkyward/status/1846427242974298343 (Oct. 16, 2024).
[45] https://x.com/ArbiterSkyward/status/1841237511408140733 (Oct. 1, 2024).



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

antisemitic racial slurs. For example, in response to this lawsuit's filing, Simpson wrote "That zionist bastard can shove it."[46] Not only has SCS failed to impose a ban on Simpson, but SCS has also utilized him as a commentator for its tournaments.

76. SCS moderators make their interactive services generally available to individuals in New York in this judicial district, some of whom utilize this service, while Plaintiff is blocked from accessing SCS services in New York or anywhere else.

77. To the extent that the moderators and administrators of SCS claim that they maintain their bans against Plaintiff for suspected violations of a neutrally applied "hate speech" policy, and not because he is Jewish, this position is false. SCS welcomes non-Jews engaging in anti-Semitic "hate speech," thus applying a discriminatory double standard to Plaintiff, as opposed to a neutrally applied policy.

78. As a server on Discord, SCS offers members of the public the ability to contract to participate in their servers and organize competition with fellow Smash enthusiasts (for mutually agreed upon prize money) but denied Plaintiff this opportunity.

**COUNT I**

Violation of Title II of the Civil Rights Act of 1964
42 U.S.C. § 2000a
(Against All Defendants except Unknown Defendants 7 and 8)

79. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

80. 42 U.S.C. § 2000a(a) reads: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

[46] https://x.com/ArbiterSkyward/status/1871073460551852122



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

81. For purposes relevant here, places of public accommodation are statutorily defined as including "any inn, hotel, motel, or other establishment which provides lodging to transient guests"; any restaurant . . . or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment"; and any "sports arena, stadium or other place of exhibition or entertainment." 42 U.S.C. § 2000a(b).

1. 42 U.S.C. § 2000a-2 reads in relevant part: "No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a-1 of this title, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a-1 of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a-1 of this title."

82. Plaintiff is of Jewish race, religion, and national origin, and all of these identities are inseparably connected to the land of Israel, its people, its sovereignty, and its use of military actions to defend itself. Due to both Plaintiff's Jewish race, religion, and national origin standing on their own as well as the connection and affinity these identities have to Israel, Defendants Waypoint, Chandler, Unknown Defendants 3, Tirrell, and Krchmar, denied Plaintiff the right to the full and equal enjoyment of competing in their Smash tournaments and/or patronizing their associated establishments.

83. Defendants Mendez, Unknown Defendants 2, and Unknown Defendants 4 deprived and/or attempted to deprive Plaintiff of his right to participate in aforestated Defendants' tournaments and/or patronize their establishments by soliciting Plaintiff's bans.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

84. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT II**
Violation of the Civil Rights Act of 1866
42 U.S.C. § 1981
(Against all Defendants)

85. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

86. 42 U.S.C. § 1981(a) reads: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

87. 42 U.S.C. § 1981(b) reads: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

88. Plaintiff is a racially Jewish person within the jurisdiction of the United States who, because of his Jewish race, was unlawfully denied the same right to contract as white citizens when Defendants Waypoint, Chandler, Unknown Defendants 3, Tirrell, Krchmar, Russell, Lewis, Fredrickson, Sorensen, Villeneuve, and Unknown Defendants 7 blocked him from contracting to join their tournaments and/or tournament related interactive websites and/or contracting to purchase food, collector's items, or tournament related souvenirs.

89. The statute under which this cause arises "was designed to do just what its terms suggest: to prohibit all racial discrimination . . . with respect to the rights enumerated therein." *Runyon v. McCrary*, 427 U.S. 160, 170, 96 S. Ct. 2586, 2594, 49 L. Ed. 2d 415 (1976). Defendants Mendez and Unknown Defendants 2, 4, and 8 soliciting aforestated Defendants to ban Plaintiff constitutes racial discrimination with respect to the rights enumerated under this statute as



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

Plaintiff was targeted both because of his actual and/or perceived Jewish race and inseparable characteristics like his support for and affinity to Israel.

90. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT III**
Violation of the Civil Rights Act of 1866
42 U.S.C. § 1982
(Against all Defendants)

91. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

92. 42 U.S.C. § 1982 reads "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

93. Plaintiff is a racially Jewish citizen of the United States. Defendants Waypoint, Chandler, Unknown Defendants 3, Tirrell, Krchmar, Russell, Lewis, Fredrickson, Sorensen, Villeneuve, and Unknown Defendants 7 denied Plaintiff the right to purchase and/or hold personal property in the form of tournament souvenirs collectibles, including those sold at the "artist alley," and/or money, when they banned Plaintiff from competing in their tournaments or utilizing their servers. White citizens were not similarly deprived.

94. The statute under which this cause arises "was designed to do just what its terms suggest: to prohibit all racial discrimination . . . with respect to the rights enumerated therein." *Runyon v. McCrary*, 427 U.S. 160, 170, 96 S. Ct. 2586, 2594, 49 L. Ed. 2d 415 (1976). Defendants Mendez and Unknown Defendants 2, 4, and 8 soliciting aforestated Defendants to ban Plaintiff constitutes racial discrimination with respect to the rights enumerated under this statute as Plaintiff was targeted both because of his actual and/or perceived Jewish race and inseparable



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

characteristics like his support for and affinity to Israel. These individuals successfully solicited a state of affairs in which Plaintiff was deprived of holding or purchasing property in a way that White citizens were not deprived.

95. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT IV**

Violation of N.Y. Civ. Rights Law §40 in conjunction with §41
(Against Defendants Waypoint, Chandler, Unknown Defendants 3, Tirrell, Krchmar, Russell, Lewis, Fredrickson, Sorensen, Villeneuve, and Unknown Defendants 7)

96. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

97. N.Y. Civ. Rights Law §40 reads in relevant part as follows: "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or directly or indirectly publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color or national origin, or that the patronage or custom thereat, of any person belonging to or purporting to be of any particular race, creed, color or national origin is unwelcome, objectionable or not acceptable, desired or solicited."



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

98. Defendants to this claim are or were at all relevant times hereto owners, lessees, proprietors, managers, superintendents, agents and/or employees of places of public accommodations, resort and/or amusement.

99. Plaintiff is of Jewish race, creed, and national origin, and as a result, Defendants denied Plaintiff access to their establishments. Defendants Waypoint, Chandler, and Unknown Defendants 3 banned Plaintiff from Waypoint as described above. Defendants Tirrell and Krchmar banned Plaintiff from LMBM as described above. Defendants Jordan Russell, Jett Lewis, Thomas Fredrickson, Andrew Sorensen, Noah Villeneuve, and Unknown Defendants 7 banned Plaintiff from SCS.

100. Defendants further transmitted communications to Plaintiff that he was being denied access on such grounds. Defendant Waypoint, in coordination with Defendants Chandler and Unknown Defendants 3, posted on Waypoint's X page the discriminatory grounds for Plaintiff's ban. Defendant Tirrell, in coordination with Defendant Krchmar, posted on his X page the discriminatory grounds for Plaintiff's ban, retweeting Mendez's Zionist Weasel Tweet in making this post. Defendants Russell, Lewis, Fredrickson, Sorensen, Villeneuve, and Unknown Defendants 7, all associated with SCS, posted online that Plaintiff was blacklisted for "hate speech on Twitter," when in reality that speech was expressing his Jewish race, creed, and national origin.

101. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

102. Plaintiff seeks all damages and equitable relief to which he is entitled at law, including but not limited to the relief indicated in N.Y. Civ. Rights Law §41.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

**COUNT IV**
Violation of N.Y. Civ. Rights Law §40-c
(Against all Defendants)

103. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

104. N.Y. Civ. Rights Law §40-c states in relevant part as follows: "No person shall, because of race, creed, color, [or] national origin . . . be subjected to any discrimination in his or her civil rights . . . by any other person or by any firm, corporation or institution."

105. Plaintiff possessed a civil right to participate in Defendants' tournaments and/or patronize their establishments and/or affiliate with their groups, be it online or in person. Because of both Plaintiff's Jewish race, creed, and national origin, as well as these identities' connection to Israel, Defendants denied him access or otherwise successfully solicited the denial of such access.

106. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT V**
Violation of N.Y. Civ. Rights Law §41
(Against all Defendants )

107. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

108. N.Y. Civ. Rights Law §41 in relevant part states as follows: "Any person who . . . shall violate any of the provisions of sections forty . . . or who or which shall aid or incite the violation of any of said provisions . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved."

109. Defendants Waypoint, Chandler, and Unknown Defendants 3 coordinated with one another, and thus aided and incited one another, in banning Plaintiff from Waypoint. Defendants

Tirrell and Krchmar coordinated with one another, and thus aided and incited one another, in banning Plaintiff from LMBM. Defendants Russell, Lewis, Fredrickson, Sorensen, Villeneuve, and Unknown Defendants 7 coordinated with one another, and thus aided and incited one another, in banning Plaintiff from SCS. As described above, all of these bans centered on Plaintiff's Jewish race, creed, and national origin as well as their connection to Israel.

110. On or about December 20, 2023, Jonathan Mendez tweeted to the LMBM organizers "why is this racist zionist weasel allowed at your events" and other tweets, as described above, aimed at causing Plaintiff to be banned from LMBM on grounds connected to Plaintiff's Jewish race, creed, and national origin as related to Israel. In direct response to Mendez's tweets, LMBM organizer Tirrell announced that Plaintiff would be banned.

111. By advocating and campaigning for Plaintiff to be banned from LMBM on account of his race, creed, and national origin—a request that was granted—Mendez aided and incited a violation of N.Y. Civ. Rights Law §40.

112. Mendez was not the only individual who contacted tournament organizers and related places of public accommodation to incite Plaintiff's ban. Unknown Defendants 2, 4, and 8 also partook in such actions.

113. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

114. Plaintiff seeks all damages and equitable relief to which he is entitled to at law, including but not limited to the relief provided in the subject statute.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

**COUNT VI**

Violations of New York City Human Rights Law

NYC Administrative Code 8-107(4)

(Against Defendants Waypoint, Chandler, Unknown Defendants 3, Tirrell, Krchmar, Russell, Lewis, Fredrickson, Sorensen, Villeneuve and Unknown Defendants 7)

115. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

116. NYC Administrative Code 8-107(4) in relevant part reads as follows: "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation: Because of any person's actual or perceived race, creed, [or] national origin . . . directly or indirectly: To refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation."

117. The statute further prohibits any such owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation "[d]irectly or indirectly to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that: Full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, facilities, and privileges of any such place or provider of public accommodation shall be refused, withheld from or denied to any person on account of race, creed, [or] national origin . . . or [t]he patronage or custom of any person is unwelcome, objectionable, not acceptable, undesired or unsolicited because of such person's actual or perceived race, creed, [or] national origin."

118. Defendants relevant to this count were owners, proprietors, managers, agents, and/or employees of places and/or providers of public accommodations. Because of both Plaintiff's



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

Jewish race, creed, and national origin as well as their connection to Israel, Defendants denied Plaintiff the full and equal enjoyment, on equal terms and conditions, of their accommodations, advantages, services, facilities, or privileges of participating in their tournaments, purchasing their products, and/or being a member of their groups or servers.

119. Specifically, Defendants Waypoint, Chandler, and Unknown Defendants 3 banned Plaintiff from Waypoint as described above. Defendants Tirrell and Krchmar banned Plaintiff from LMBM as described above. Defendants Russell, Lewis, Fredrickson, Sorensen, Villeneuve and Unknown Defendants 7 banned Plaintiff from SCS.

120. Defendants also made declarations, publications, posts, and/or written communications asserting that Plaintiff would be denied full and equal enjoyment, on equal terms and conditions, of participating in their tournaments, purchasing their products, and/or being a member of their groups and that his patronage is similarly unwelcome, objectionable, not acceptable, undesired and unsolicited because of Plaintiff's Jewish race, creed, and national origin.

121. Specifically, Defendant Waypoint, in coordination with Defendants Chandler and Unknown Defendants 3, posted on Waypoint's X page the discriminatory grounds for Plaintiff's ban. Defendant Tirrell, in coordination with Defendant Krchmar, posted on his X page the discriminatory grounds for Plaintiff's ban, retweeting Mendez's Zionist Weasel Tweet in making this post. Defendants Russell, Lewis, Fredrickson, Sorensen, Villeneuve, Unknown Defendants 7 associated with SCS posted online that Plaintiff was blacklisted for "hate speech on Twitter," when in reality that speech was expressing his Jewish race, creed, and national origin.

122. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

**COUNT VII**
Violations of New York City Human Rights Law
NYC Administrative Code 8-107(6)
(Against all Defendants )

123. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

124. NYC Administrative Code 8-107(6) reads: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

125. Defendants Waypoint, Chandler, and Unknown Defendants 3 coordinated with one another, and thus aided, abetted, and incited one another, in banning Plaintiff from Waypoint. Defendants Tirrell and Krchmar coordinated with one another, and thus aided, abetted, and incited one another, in banning Plaintiff from LMBM. Defendants Russell, Lewis, Fredrickson, Sorensen, Villeneuve, and Unknown Defendants 7 coordinated with one another, and thus aided, abetted, and incited one another, in banning Plaintiff from SCS. As described above, all of these bans centered on Plaintiff's Jewish race, creed, and national origin.

126. On or about December 20, 2023, Jonathan Mendez tweeted to the LMBM organizers "why is this racist zionist weasel allowed at your events" and other tweets as described, above,aimed at causing Plaintiff to be banned from LMBM on grounds connected to both Plaintiffs Jewish race, creed, and national origin as well as their connection to Israel. In direct response to Mendez's tweets, LMBM organizer Tirrell announced that Plaintiff would be banned.

127. By issuing his requests that Plaintiff be banned from LMBM on account of his race, creed, and national origin—a request that was granted—Mendez acted to aid, abet, incite, compel and/or coerce LMBM to violate the NYC Administrative Code 8-107(4).



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

128. Mendez was not the only individual who contacted tournament organizers and servers and acted to aid, abet, incite, compel and/or coerce the imposition of Plaintiff's bans. Unknown Defendants 2, 4, and 8 also partook in such actions.

129. The bans on Plaintiff were instituted in violation of NYC Administrative Code 8-107(4).

130. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT VIII**

Violation of New York Executive Law § 296(2)(a)

(Against Defendants Waypoint, Chandler, Unknown Defendants 3, Tirrell, Krchmar, Russell, Lewis, Fredrickson, Sorensen, Villeneuve, and Unknown Defendants 7)

131. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

132. New York Executive Law § 296(2)(a) reads in relevant part as follows: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed . . . [or] national origin of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, [or] national origin . . . or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, [or] national origin . . . is unwelcome, objectionable or not acceptable, desired or solicited."



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

133. Defendants are or were at all relevant times hereto owners, lessees, proprietors, managers, superintendents, agents and/or employees of places of public accommodation, resort and/or amusement.

134. Plaintiff is of Jewish race, creed, and national origin, and as a result, Defendants denied Plaintiff access to their establishments and further transmitted communications to Plaintiff that he was being denied access on such grounds.

135. Specifically, Defendant Waypoint, in coordination with Defendants Chandler and Unknown Defendants 3, posted on Waypoint's X page the discriminatory grounds for Plaintiff's ban. Defendant Tirrell, in coordination with Defendant Krchmar, posted on his X page the discriminatory grounds for Plaintiff's ban, retweeting Mendez's Zionist Weasel Tweet in making this post. Defendants Russell, Lewis, Fredrickson, Sorensen, Villeneuve, and Unknown Defendants 7 associated with SCS posted online that Plaintiff was blacklisted for "hate speech on Twitter," when in reality that speech was expressing his Jewish race, creed, and national origin.

136. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT IX**

Violation of New York Executive Law § 296(6)
(Against all Defendants)

137. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

138. New York Executive Law § 296(6) reads in full: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

139. Defendants Waypoint, Chandler, and Unknown Defendants 3 coordinated with one another, and thus aided, abetted, and incited one another, in banning Plaintiff from Waypoint. Defendants Tirrell and Krchmar coordinated with one another, and thus aided, abetted, and incited one another, in banning Plaintiff from LMBM. Defendants Russell, Lewis, Fredrickson, Sorensen, Villeneuve, and Unknown Defendants 7 coordinated with one another, and thus aided, abetted, and incited one another, in banning Plaintiff from SCS. As described above, all of these bans centered on Plaintiff's Jewish race, creed, and national origin.

140. On or about December 20, 2023, Jonathan Mendez tweeted to the LMBM organizers "why is this racist zionist weasel allowed at your events" and other tweets as described above aimed at causing Plaintiff to be banned from LMBM on grounds connected to Plaintiff's Jewish race, creed, and national origin. In direct response to Mendez's tweets, LMBM organizer Tirrell announced that Plaintiff would be banned.

141. By issuing his requests that Plaintiff be banned from LMBM on account of his race, creed, and national origin—a request that was granted—Mendez sought to aid, abet, incite, compel and/or coerce the banning of Plaintiff and his attempt to do so was successful.

142. Mendez was not the only individual who contacted tournament organizers and servers and incited the imposition of Plaintiff's bans. Unknown Defendants 2, 4, and 8 also partook in such actions.

143. The bans on Plaintiff violated New York Executive Law § 296(2)(a).

144. As a direct and proximate result of Defendants' actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

**COUNT X**
Breach of Contract
(Against Defendants Tirrell and Krchmar)

145. Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

146. "Under New York law, the elements of a cause of action for breach of contract are: (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." *Turner v. Temptu Inc.*, 586 F. App'x 718, 720 (2d Cir. 2014).

147. A contract existed whereby, in consideration of Plaintiff furnishing a registration fee, Defendants to this claim were obligated to permit Plaintiff to compete in LMBM. Plaintiff furnished said registration fee. The Defendants did not permit Plaintiff to participate in LMBM. Plaintiff suffered damages in the form of his lost registration fee.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A. That the Court enter judgment against Defendants and award damages no less than $1,000,000 (One Million Dollars);

B. That the Court enter judgment in favor of Plaintiff against Defendants for all equitable monetary damages available under the law including injunctive relief requiring Defendants to permit Plaintiff to participate in their tournaments, patronize their establishments, and join their groups;

C. That the Court order Defendants to pay compensatory damages;

D. That the Court order Defendants to pay punitive damages;

E. That the Court order Defendants to pay Plaintiff's reasonable attorney's fees, expert fees, and costs; and



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

F. That the Court order Defendants to pay pre-judgment and post-judgment interest as provided by law.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all claims against Defendants.

Date: August 21, 2025

Respectfully submitted,

National Jewish Advocacy Center, Inc.

/s/ *Matthew Mainen*
Matthew Mainen
Maryland Bar No. 2012170265*
Practicing *Pro Hac Vice*
Email: matt@njaclaw.org

/s/ *Lauren Israelovitch*
Lauren Israelovitch
lauren@njaclaw.org

3 Times Square
New York, NY 10036
Phone: (301) 814-9007

*Attorney does not practice in New York; mail will be forwarded to him.



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3

**VERIFICATION**

I, Felix Hasson, Plaintiff in this matter, do hereby verify and affirm under penalty of perjury that the facts set forth in the foregoing Verified Second Amended Complaint are true and correct to the best of my knowledge, information, and belief.

08/21/2025
_______________________

Date

Felix Hasson
_______________________

Felix Hasson



Document ID: 000c0029-ac5b-46d5-9e40-3fe3948a87f3