**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FELIX HASSON,<br><br>Plaintiff,<br><br>-vs-<br><br>MAXIMILLIAN KRCHMAR,<br><br>Defendant. | Case No.: 1:26-cv-00114 |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MAXIMILLIAN KRCHMAR'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## CONTENTS

LEGAL ARGUMENT ........................................................................................................ 1

I. Plaintiff's Complaint Fails to Adequately Allege Discriminatory Intent by Defendant, Compelling the Dismissal of Plaintiff's Claims for (i) Violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (Count I); (ii) Violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982 (Counts II & III); (iii) Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985 (Count IV); (iv) Violation of N.Y. Civ. Rights Law §§ 40, 40-c, and 41 (Counts VII, VIII & IX); (v) Violation of the New York City Human Rights Law, NYC Administrative Code 8-107 (Counts X & XI); or (vi) Tortious Interference with Contract (Count XII) (incorrectly identified as a claim for violation of New York City Human Rights Law, NYC Administrative Code 8-107) ........................................... 1

II. Plaintiff's Claim for Violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (Count I) is Moot ........................................................................................ 3

III. The Intracorporate Conspiracy Doctrine Compels the Dismissal of Plaintiff's Claim Pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1985 (Count IV) and for Torious Interference with Contract (XII) .......................................................................... 4

IV. Plaintiff Cannot Cure his Procedural Deficiency by Dismissing A Complaint and Filing a New One, Compelling Dismissal of his Claims for Violation of the N.Y. Civ. Rights Law §§ 40, 40-c, and 41 (Counts VII, VIII & IX) ..................................................... 6

CONCLUSION ........................................................................................................ 7

CERTIFICATE OF COMPLIANCE WITH WORD COUNT/TYPE FACE ............................... 8

Defendant Maximillian Krchmar ("Defendant" or "Krchmar") respectfully submits this reply memorandum of law in support of his motion to dismiss Plaintiff Felix Hasson's ("Plaintiff") Verified Complaint, ECF Doc. 1 (the "Complaint").

## LEGAL ARGUMENT

### I. Plaintiff's Complaint Fails to Adequately Allege Discriminatory Intent by Defendant, Compelling the Dismissal of Plaintiff's Claims for (i) Violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (Count I); (ii) Violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982 (Counts II & III); (iii) Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985 (Count IV); (iv) Violation of N.Y. Civ. Rights Law §§ 40, 40-c, and 41 (Counts VII, VIII & IX); (v) Violation of the New York City Human Rights Law, NYC Administrative Code 8-107 (Counts X & XI); or (vi) Tortious Interference with Contract (Count XII) (incorrectly identified as a claim for violation of New York City Human Rights Law, NYC Administrative Code 8-107)

Plaintiff likes to ignore the very simple fact that he was not banned from the LMBM tournament because of his beliefs, but rather because of his offensive public statements about Palestinians. Had the LMBM Tournament Organizers ("TO(s)") affirmatively sought to ban Zionists t from the tournament, then Plaintiff's claim could survive a motion to dismiss. But that is not the case here. All of the cases cited by Plaintiff in support of his argument that it should be up for a jury to decide whether anti-Zionism could be antisemitic involve affirmative acts by the defendants or others affiliated with defendants to engage in direct speech or conduct against other groups or individuals based on some characteristic. *See Sinai v. New Eng. Tel. & Tel. Co.,* 3 F.3d 471, 474 (1st Cir 1993) (prospective employer "twice disparaged appellee's Israeli background"); *Frankel v. Regents of the Univ. of Cal*., 744 F. Supp. 3d 1015, (C.D. Cal. 2024) (checkpoints were set up and "people who supported the existence of the state of Israel were kept out" of portions of campus); *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245 (S.D.N.Y. Feb. 5, 2025) (pro-Palestinian engaged in words ant activities against Jews and Israel); *Sumrall v. Ali*, 793 F. Supp. 3d 199, 201 (D.D.C. 2025) (defendant

pulled plaintiff's Israeli flag during a protest); *Banks v. GM, LLC*, 81 F.4th 242, 251 (2d Cir. 2023) (manager called plaintiff racial slurs); *Kelly v. Metro-North C. R.R.*, No. 87 Civ. 5817 (JFK), 1989 U.S. Dist. LEXIS 15025, at *15 (S.D.N.Y. Dec. 18, 1989) (employer told orthodox Jewish plaintiff "You don't fit in" when demanding plaintiff resign); *Hairston v. Royal Bldg. Prods.*, No. 1:18CV00003, 2019 U.S. Dist. LEXIS 62936, at *4 (W.D. Va. Apr. 12, 2019) (plaintiff received racially discriminatory communications at work); *EEOC v. WRS Infrastructure & Env't, Inc.*, No. 09 C 4272, 2011 U.S. Dist. LEXIS 110149, at *2 (N.D. Ill. Sep. 27, 2011) (black employees subject to racial harassment at work); *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 138 (2d Cir. 2024) (discriminatory termination); *Kopmar v. Ass'n of Legal Aid Attys.*, No. 24-CV-5158 (JPO), 2025 U.S. Dist. LEXIS 134446, at *2 (S.D.N.Y. July 15, 2025) (unlawful retaliation for filing a lawsuit to challenge antisemitic resolution).

Here, unlike in the foregoing cases, Plaintiff acknowledges that another participant reported Plaintiff's inflammatory public statements to the LMBM Tournament Organizers ("TO(s)") and stated that Palestinians would not feel safe if Plaintiff attended. *See* ECF Doc. 1 at ¶ 27. It is undisputed that Plaintiff made the following public statements:

- In reference to Palestinians playing Smash: "would have been mad funny if the most popular character was snake or any other character that pulls bombs." *See* ECF Doc. 1 at ¶ 24 & **Ex. 1** at p. 3.
- In response to a Palestinian tweeting that she "Lost everything", Plaintiff posted "LMAOOO". *See* ECF Doc. 1 at ¶ 26 & **Ex. 1** at p. 5.

It further undisputed that it was in response to these reported statements that Plaintiff was banned from the LMBM tournament. *See* ECF Doc. 1 at ¶ 30. Thus, it is undisputed that the TOs were

not targeting Plaintiff based on his beliefs, but rather they were responding to complaints by other participants about Plaintiff's offensive public comments about Palestinians.

Plaintiff relies heavily on Defendant's use of the term "Zionist weasel". However, Defendant's use of that term does not imply a discriminatory intent in the decision to ban Plaintiff. It is undisputed that Plaintiff did not message Cyrus Gharakhanian ("Gharakhanian") and Geoffrey Tirrell ("Tirrell") until after he had already been banned from the LMBM tournament. *See* ECF Doc. 1 at ¶ 30 and **Ex. 3** at pp. 2-9. There is no allegation that Defendant was aware that Plaintiff was Jewish until after Gharakhanian and Tirrell circulated Plaintiff's message. Thus, it is undisputed that the decision to ban Plaintiff was made before anyone was aware of Plaintiff's religion. Plaintiff acknowledges that Defendant used the term after the decision had already been made to ban Plaintiff. Thus, Plaintiff's own Complaint acknowledges a non-discriminatory reason for being banned from the LMBM tournament and does not offer any facts occurring prior to Plaintiff being banned to demonstrate that the non-discriminatory reason was pretextual.

## II. Plaintiff's Claim for Violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (Count I) is Moot

Plaintiff acknowledges that Defendant "previously 'agreed to a stipulated preliminary injunction prohibiting Defendant from banning Plaintiff," *see* ECF Doc No. 16 at p. 30, which is all Plaintiff can obtain under Title II. Instead, Plaintiff complains that the language of the injunction was too broad. As set forth in Defendant's moving brief (ECF Doc No. 15-1 at pp. 8-9, Plaintiff did not really reject the injunction because it's too broad, but rather because his attorney wanted case law tying Judaism with Zionism and related support of and affinity to Israel and its military. *See* ECF Doc. Nos. 15-6 & 15-9. As Defendant has already agreed not to ban Plaintiff from any events, for whatever reason, Plaintiff's claim is moot.

## III. The Intracorporate Conspiracy Doctrine Compels the Dismissal of Plaintiff's Claim Pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1985 (Count IV) and for Torious Interference with Contract (XII)

As to Count IV of his Complaint, Plaintiff relies on *Turkmen v. Hasty*, 789 F.3d 218, 263 (2d Cir. 2015) *rev'd on other grounds in Ziglar v. Abbasi*, 582 U.S. 120, 152-55 (2017) for the proposition "that where various entities in a single institution have 'disparate responsibilities and functions,' a conspiracy claim could lie because the actions of those entities would not be 'actions of only one policymaking body.'" (internal citation omitted). However, *Turkmen* involved two actually distinct entities, the Metropolitan Detention Center and the Department of Justice, each of which had "varied responsibilities and functions." *Id.* at 263.

In support of his tortious interference claim, Plaintiff relies on *30 CPS, LLC v. Bd. of Managers of Cent. Park S. Med. Condo.*, 23 Misc. 3d 1024, 1032 (Sup. Ct. 2009), for the proposition that "unlawful discrimination is sufficiently culpable to support a claim of interference with prospective economic relations." However, Plaintiff's claim is not for tortious interference with prospective economic relations, rather it is for tortious interference with an existing contract, and *30 CPS, LCC* does not address whether an agent of the contracting party can be liable for tortious interference with contract based on an allegation of unlawful discrimination. As with the intraconspiracy doctrine, an agent of one of the contracting parties is generally not a stranger to the contract. *See Minetos v. City Univ. of N.Y.*, 925 F. Supp. 177, 187-88 (S.D.N.Y. 1996) ("[A]n agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he [or she] is acting on behalf of his principal and within the scope of his authority." (alteration in original) (citation omitted)). Additionally, an employee of a party is not a stranger to the contract unless the employee "has exceeded the bounds of his or her authority." *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996).

Plaintiff further argues that when a "plaintiff can show that [the defendant] and the other employees conspired with each other on the basis of personal animus, and not out of any desire to serve the interests of the [employer], then the intra-enterprise doctrine would not apply." *De Litta v. Village of Mamaroneck*, 166 F.App'x 497, 499 (2d Cir. 2005). However, the Second Circuit has expressly extended the intracorproate doctrine "to the context of conspiracies to interfere with civil rights in violation of 42 U.S.C. § 1985." *Fed. Ins. Co. v. United Staes*, 882 F.3d 348 at 368 n.14 (2d Cir. 2018) (citing *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 70 (2d Cir. 1976)). Therefore, in order to deprive Defendant of the protection afforded by the intracorporate document, Plaintiff must plead not just that Defendant was motivated by personal animus (otherwise the *Fed. Ins. Co.* holding would be meaningless), but rather that he was acting outside the scope of his employment.

In the instant matter, the TOs were individuals working as agents of LMBM to implement the tournament. Plaintiff argues i that the fact that LMBM's leadership reached out to the TOs after the decision to ban Plaintiff was made somehow shows that there was a disconnect between LMBM's leadership and the TOs. First, it does not show a disconnect, but rather a boss questioning a decision that was delegated to agents, and ultimately, LMBM did not reverse the TOs decision, undermining any claim of a disconnect. Moreover, the standard is not whether there is a "disconnect", but rather whether the agents acted within the scope of their authority. *See Fed. Ins. Co.,* 882 F.3d at 368 (The "intracorporate conspiracy doctrine" holds that "because employees acting within the scope of their employment are agents of their employer, an employer and its employees are generally considered to be a single actor, rather than multiple conspirators."). Thus, the fact that LMBM's leadership discussed the decision with the TOs and

did not reverse the TOs' decisions establishes that the TOs acted within the scope of their employment.

Accordingly, pursuant to the "intracorporate conspiracy doctrine", Defendant cannot be liable for a conspiracy claim under Section 1985(3), or tortious interference with contract, compelling dismissal of Counts IV and XII of Plaintiff's Complaint with prejudice.

**IV. Plaintiff Cannot Cure his Procedural Deficiency by Dismissing A Complaint and Filing a New One, Compelling Dismissal of his Claims for Violation of the N.Y. Civ. Rights Law §§ 40, 40-c, and 41 (Counts VII, VIII & IX)**

Section 41 requires that "[a]t or before the commencement of ***any action*** under this section, notice thereof shall be served upon the attorney general." N.Y. Civil Rights Law § 41 (emphasis added). Although Plaintiff has now alleged that that he served notice upon the attorney general "immediately prior to filing this action", he ignores the fact that he previously filed an action against Defendant asserting a claim pursuant to N.Y. Civil Rights Law § 41 and did not serve the required notice. *See* ECF Doc. No. 15-2 at ¶¶ 4-6. Since notice must be served "[a]t or prior to the commencement of ***any action***", Plaintiff cannot cure this defect by merely dismissing a prior complaint and then giving notice of the new complaint. Such an outcome would, in essence, render the notice provision moot. Thus, Plaintiff has not alleged and cannot allege that he complied with this requirement, compelling the dismissal of Counts VII, VIII, and IX of Plaintiff's Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that the Court grant his Motion to Dismiss Plaintiff's Complaint with prejudice.

**NEXTGEN COUNSEL LLC**
*Attorneys for Defendant Maximillian Krchmar*

*/s/Michael H. Ansell*
BY: MICHAEL H ANSELL, ESQ.

Dated: April 17, 2026

## **CERTIFICATE OF COMPLIANCE WITH WORD COUNT/TYPE FACE**

This brief complies with the type-volume limitation of S.D.N.Y. Local Rule 7.1(c) because the brief contains 1965 words (as calculated by Word software), excluding the parts of the brief exempted by S.D.N.Y. Local Rule 7.1(c).

This brief complies with the typeface and formatting requirements of S.D.N.Y. Local Rule 7.1(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 12-point font, and is double-spaced, except for the parts of the brief exempted by S.D.N.Y. Local Rule 7.1(b).

**NEXTGEN COUNSEL LLC**
*Attorneys for Defendant Maximillian Krchmar*

*/s/Michael H. Ansell*
BY: MICHAEL H ANSELL, ESQ.

Dated: April 17, 2026